Charles **BRINKMAN**, Plaintiff,

v.

**BUFFALO BILLS FOOTBALL CLUB— DIVISION OF HIGHWOOD SERVICE, INC.,** Defendant.

No. Civ. 75–414.

United States District Court, W. D. New York.

July 13, 1977.

Albrecht, Maguire, Heffern & Gregg, Buffalo, N. Y., for plaintiff; Richard T. Sullivan, Buffalo, N. Y., of counsel.

O'Shea, Adamson, Reynolds & Napier, Raichle, Banning, Weiss & Halpern, Buffa-

lo, N. Y., for defendant; Philip O'Shea, Ralph L. Halpern, Buffalo, N. Y., of counsel.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff herein was a football player with the "Buffalo Bills" Football Club for the 1973 and 1974 seasons. On April 12, 1973 plaintiff entered into the "Standard Player Contract" with the Bills with $15,000 agreed upon as the compensation. While playing in an exhibition game August 17, 1973, he suffered a fracture of the left forearm. Surgery for the injury was performed August 18, 1973 by Dr. Joseph Godfrey, team physician for the Bills, who installed a compression plate fixation in plaintiff's arm. While this prevented plaintiff from playing during the remainder of the 1973 season, he received the compensation agreed upon in his contract. On May 13, 1974 plaintiff entered into another "Standard Player Contract" with the Bills with $22,000 as the compensation. Prior to the start of the 1974 season no further surgery was performed in regard to the compression plate. Plaintiff alleges that he had been specifically told by Dr. Godfrey that the compression plate would be removed prior to play. However, it was not.

Shortly after reporting to the training camp of the Buffalo Bills during the general strike of the National Football League ("NFL") Players Association, plaintiff played in an exhibition game. Early in the game, plaintiff received a blow to his left arm which rendered the arm completely numb. He was removed from the game and, according to plaintiff's affidavit of December 30, 1975, he stayed in training camp for approximately ten days without practicing or engaging in contact work. The November 3, 1975 affidavit of Robert T. Lustig, General Manager of the Buffalo Bills, states that plaintiff missed only two days of practice. Plaintiff's affidavit further states that Dr. Godfrey examined his arm on August 21, 1974 but that plaintiff was not informed that he was physically fit to play football. (Dr. Godfrey's affidavit of No-

vember 4, 1975 sets August 20, 1974 as the date of the examination.) While Dr. Godfrey states that he found plaintiff then fit to play, he does not state that such determination was conveyed to plaintiff. Finally, on August 22, 1974 plaintiff's contract was terminated after then Head Coach Louis H. Saban determined that plaintiff

" * * * failed to demonstrate sufficient skill and capacity to play professional football of the caliber required by the Buffalo Bills and that in my opinion Brinkman's work and conduct in the performance of his employment contract with the Buffalo Bills was unsatisfactory as compared with the work and conduct of the other members of the Buffalo Bills squad of players." Saban's affidavit of November, 7, 1975.

Such termination was permitted under paragraph 6 of the "Standard Player Contract".

Upon his termination plaintiff retained an attorney, Howard S. Slusher, Esq., who communicated with General Manager Lustig for the purposes of instituting a claim under an injury grievance procedure pursuant to the 1970 Collective Bargaining Agreement between the NFL Players Association and the NFL Management Council. The Agreement, however, was no longer in effect, having expired January 31, 1974. By letter dated September 9, 1974, Lustig informed plaintiff's then attorney of the expiration of the grievance procedure and offered to waive the 72-hour limit of paragraph 14 of the "Standard Player Contract" which permits an examination by a physician of the player's choice after examination by the team physician. The waiver offer was conditioned upon the plaintiff submitting as soon as possible to the examination by his physician. Plaintiff, however, did not undergo an examination until the Spring of 1975.

This action was initiated September 17, 1975 in the Supreme Court of the State of New York, County of Erie and removed to this Court by petition of defendant October 7, 1975. This Court has diversity of citizenship jurisdiction under 28 U.S.C.

§ 1332(a)(1) inasmuch as the matter in controversy exceeds $10,000.

Upon receipt of defendant's answer, plaintiff moved this Court to strike defendant's affirmative defenses grounded on the New York Workmen's Compensation Law and plaintiff's failure to comply with contractual procedures under paragraph 14 of the "Standard Player Contract". Defendant countermoved for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure.

The Complaint alleges six causes of action. Firstly, it is alleged that defendant failed to provide plaintiff with such medical or hospital care as he required in breach of its obligations under paragraph 14 of the 1973 contract. Secondly, plaintiff alleges that defendant negligently failed to provide such medical and hospital services, care and treatment required under the 1973 contract to treat and care properly for plaintiff's injury. The third cause of action alleges a breach of the 1974 contract in that plaintiff was terminated solely because of the 1974 injury and not due to the quality of his play. The fourth alleged cause is the same as the second except that it relates to the 1974 injury and contract. The fifth alleges that plaintiff was negligently pronounced able to play on August 6, 1974 (prior to the exhibition game) when in fact he was not, this in breach of his 1974 contract. Finally, the sixth is the same as the first cause except that it relates to the 1974 injury and contract.

■■■ Defendant's third affirmative defense, the subject of plaintiff's motion to strike and defendant's motion for summary judgment, is directed at all causes of action except the third. The question of law presented to this Court is whether section 11 of New York State's Workmen's Compensation Law bars those five causes of action. Under section 11, the liability of an employer to an employee for injury arising out of and in the course of his employment is limited to that prescribed by section 10 of Workmen's Compensation Law. This is in the place and stead of any other liability whatsoever to which the employer would

otherwise be subjected at common law on account of such injury. Plaintiff argues that the gravamen of each cause of action is breach of contract and in no way concerns issues that might be raised in a proceeding under the Workmen's Compensation Law. Such a characterization by plaintiff of his causes of action attempts to circumvent the public policy as expressed in the Workmen's Compensation Law. The relationship between an employee and his employer is contractual and any cause of action by either for damages arising out of that relationship is a cause of action for breach of contract. It is the nature of the damages which determines whether workmen's compensation is the exclusive remedy. An action for bodily injury is barred. Therefore, a claim for bodily injury due to negligent medical treatment, which is the essence of all of plaintiff's causes of action except the third, by defendant's employee is barred. *Garcia v. Iserson*, 33 N.Y.2d 421, 353 N.Y.S.2d 955, 309 N.E.2d 420 (1974). Defendant hereby is granted summary judgment of dismissal of plaintiff's first, second, fourth, fifth and sixth causes of action.

■■■ Plaintiff's third cause of action is an action for wages and is not barred by the Workmen's Compensation Law. To this cause of action defendant's answer raised the affirmative defense of plaintiff's failure to follow the required arbitration procedure set forth in paragraph 14 of his "Standard Player Contract". Plaintiff has moved to strike this affirmative defense on the grounds that the arbitration provision does not apply to the player whose services have been terminated in violation of the contract. Plaintiff also states that he was never informed of Dr. Godfrey's determination that he was able to play and that the defendant by agreement waived the time limit of paragraph 14. Defendant has moved for summary judgment on the grounds that paragraph 14 is applicable and that plaintiff has failed to follow it. The paragraph reads as follows:

"In the event that Player [plaintiff] is injured in the performance of his services

under this contract, and if Player gives written notice to the Club Physician [Godfrey] of such injury within thirty-six (36) hours of its occurrence, the Club [Defendant] will: (1) provide, during the term of this contract, such medical or hospital care as, in the opinion of the Club Physician, may be necessary; and (2) continue, during the term of this contract, to pay Player his salary as provided in ¶ 3 or ¶ 10 hereof, whichever is applicable if and so long as it is the opinion of the Club Physician that Player, because of such injury, is unable to perform the services required of him by this contract. Player, may, within seventy-two (72) hours after his examination by the Club Physician, submit at his own expense to an examination by a physician of his choice. If the opinion of such physician with respect to Player's physical ability to render the services required of him by this contract is contrary to that of the Club Physician, the dispute shall be submitted to a disinterested physician to be selected by the Club Physician and Player's physician or, if they are unable to agree, by the Commissioner [of the NFL], and the opinion of such disinterested physician shall be conclusive and binding upon the Player and the Club. Except as provided in this paragraph, Player's failure for any reason whatsoever to perform this contract or the services required of him by this contract, or his failure to comply with: [sic] the Constitution and By-Laws, Rules and Regulations of the League [NFL], or of the Club, shall entitle the Club, at its option, to terminate such contract, such termination to be effective when the Club sends to the Player written notice of such termination, or shall entitle the Club at its option to terminate Player's salary under this contract. The Player's death shall automatically terminate this contract. The rights of termination set forth in this paragraph shall be in addition to the rights of termination set forth in ¶ 6 hereof, and any other rights of termination allowed by law.

"If Player is injured in the performance of his services under this contract, this contract shall remain in full force and effect despite the fact that Player, following injury, is either carried by the Club on its Reserve List or is waived out as an injured player while injured; when such Player is, in the opinion of the Club Physician, again physically able to perform his services under this contract, the Club shall have the right to activate such Player, and Player shall be obligated to perform his services hereunder in accordance with the terms hereof."

As expressed in paragraph 14, a condition precedent to the arbitration procedure is the requirement that the Player submit to examination by a physician of his choice within seventy-two hours after his examination by the Club Physician and that the opinion of such physician be contrary to that of the Club Physician. There is no question that plaintiff was not so examined. Also, the affidavits submitted by defendant do not contradict plaintiff's allegation that he was not informed of the Club Physician's opinion before he was terminated. There is an ambiguity in the contract in that the player is required to undergo examination by his own physician within a stated time after the player has been examined by the Club Physician but there is no express requirement that the player be timely advised concerning the Club Physician's diagnosis. Yet arbitration is not precipitated unless the diagnosis of the player's physician is contrary to the Club Physician's. Obviously, what is contemplated is the possibility that the Club Physician will "find" the player fit to render his services of playing football when the player thinks to the contrary or questions the safety of playing. The event which triggers the start of the period in which the player can—must, if he wishes to avoid breach of his contract by not playing or more severe injury if he does play—is not the examination of the player by the Club Physician but the learning by the player of that doctor's diagnosis. Thus becoming cognizant of such and not wishing to build his future upon it, he then has the opportunity for an examination by a physi-

**704**

cian of his own choice. Again, there is no express requirement that the latter's opinion be made known to the Club. It is, however, necessarily implicit that it be so divulged; this, in turn, brings the arbitration into operation. Plaintiff says that he was not informed of Dr. Godfrey's opinion that his physical condition allowed the playing of football. His attorney or agent, however, was advised in writing September 9, 1974 (see Exhibit H to Lustig's affidavit) that the time had arrived for plaintiff to undergo examination by his own physician pursuant to paragraph 14. While defendant, via Lustig, thereby waived the 72 hours' requirement, it was required that the examination be made "as soon as possible" after which a "contrary" diagnosis would call for the arbitration. Plaintiff at no place alleges, states or claims that he did obtain and report such a contrary finding within 72 hours after his receipt of Lustig's letter or as soon as possible thereafter. Exhibit D to plaintiff's motion to dismiss this defense reflects an examination by his doctor in the Spring of 1975 but there is no showing of any conveyance of the results to defendant prior to defendant's receipt of plaintiff's motion.

There is no issue of fact but that plaintiff failed to hew to his contract with defendant and consequently is barred from relief under this third cause of action. Plaintiff's motion to strike defendant's second affirmative defense hereby is denied and defendant's motion for summary judgment of dismissal of plaintiff's third cause of action hereby is granted.