460 F.Supp. 1233 (1978)
James RIVERS, Plaintiff,
v.
The NEW YORK JETS, the National Football League, Defendants.
No. 77-1019C(3).
United States District Court, E. D. Missouri, E. D.
December 5, 1978.
*1234 Richard H. Edwards, Blaine, Edwards & Wideman, St. Louis, Mo., for plaintiff.
Thomas J. Guilfoil, Jim J. Shoemake and John W. O'Neil, Jr., Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon defendants' motion for summary judgment. Plaintiff brought this suit pursuant to 28 U.S.C. §§ 1332 and 1337 seeking monetary damages. Plaintiff alleges, in Count I of the complaint,
That defendant NFL [National Football League] and its member clubs, including defendant Jets, contracted, agreed, and combined and conspired to impose upon plaintiff standard terms for his services and inadequate redress for personal injury in an inherently dangerous occupation, by requiring everyone seeking to play professional football (including plaintiff) to sign said "Standard Player Contract".
Plaintiff further alleges that this requirement constitutes an unreasonable restraint of trade in that plaintiff was precluded from selling his services to a team which would assure him compensation should he be injured. Plaintiff prays for damages in the amount of $600,000.00 under the antitrust laws.
In Count II of the complaint, plaintiff alleges that defendant Jets breached the contract between the parties by refusing to pay plaintiff's salary for the 1976 football season, and further breached the same contract by unilaterally terminating the same, *1235 by refusing to pay for medical and hospital care, by refusing to pay necessary travel expenses, and by refusing to exercise the option to renew plaintiff's contract for the 1977 football season. Plaintiff prays for an award of $200,000.00.
In Count III of the complaint, plaintiff alleges that defendant Jets breached its implied covenant not to impair plaintiff's rights to receive the benefits of the contract, by wrongfully concealing from plaintiff the true nature of his physical condition and injury. Plaintiff prays for damages in the amount of $200,000.00.
Plaintiff has not responded to the instant motion for summary judgment. Accordingly, the following facts appear to be undisputed:
On July 29, 1977, the Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, entered an order approving a stipulation and settlement of a class action entitled Alexander v. National Football League, No. 4-76C 123. The class which had been certified in that cause was "the class consisting of all professional football players who have been under contract to one or more of the defendants at any time since September 17, 1972". Id., order of March 4, 1977. Defendant Jets herein was named as a defendant in that suit. By order of Judge Larson, notices of the hearing on the proposed settlement of the class action were sent to all members of the plaintiff class at the last known address; additionally, publication of the notice was made in two publications and released to the wire services. Members of the class were given an opportunity to object; plaintiff herein did not do so. The settlement, which was approved by the court, provides in relevant part:
Upon issuance of a final Court order in this action certifying the Plaintiff Class as described in the preceding paragraph 3 as a Rule 23(b)(1) class and approving the settlement of this action on the terms and subject to the conditions set forth in this Agreement, the NFLPA [National Football League Players Association], the Plaintiffs, and the members of Plaintiff Class each hereby covenant not to sue, nor support financially or administratively, any suit against the NFL or any club or against the Management Council with respect to any claim relating to any aspect of the NFL rules, including without limitation, the Standard Player Contract, the NFL Player Contract, the NFL Constitution and By-Laws, the college draft, the option clause, the right of first refusal or compensation, the "Rozelle Rule", the waiver system, the trading of players, tampering and the maintenance of certain reserve lists, all in the form in which they have been modified or agreed to in the Collective Bargaining Agreement or in any other form in which they may have existed at any time, or from time to time, during the 1972 season to and including the date of final Court approval of this Settlement Agreement; provided, however, that nothing contained in this paragraph 5 or in Section 2 of the Collective Bargaining Agreement will prevent the NFLPA or any player from asserting that any club, acting individually or in concert with other clubs, or the Management Council has breached the terms of this Settlement Agreement, or of the Collective Bargaining Agreement, the Standard Player Contract, the NFL Player Contract or the NFL Constitution and By-Laws, and from processing such asserted breach as a non-injury grievance under the procedures set forth in Article VII of the Collective Bargaining Agreement; and provided further that such covenant not to sue shall not foreclose any member of the Plaintiff Class who has duly commenced an individual action, other than the actions referred to herein, in any Federal or State Court, prior to the date of the execution of this Stipulation and Settlement Agreement, from pursuing such action to its lawful conclusion through trial and appeal. [emphasis in original]
The agreement is dated March 4, 1977 and was approved by the court on July 29, 1977. Plaintiff filed this suit on September 21, 1977. It is clear that defendants' motion *1236 for summary judgment must be granted as to Count I of the complaint. Said count alleges a violation of the anti-trust laws stemming from defendants' use of the Standard Player Contract. Such claim is embraced in the covenant not to sue contained in the settlement of the Alexander case and is binding upon plaintiff herein. See Richard's Lumber and Supply Company v. United States Gypsum Company, 545 F.2d 18, 20 (7th Cir. 1976) wherein the court held that a covenant not to sue, contained in the settlement of a prior class action suit, precluded the plaintiff, who had been a class member, from proceeding. The court stated that "in the absence of proof that it was the product of duress, such a release is fully enforceable". Id. at 20. Plaintiff has made no claim of duress herein. Accordingly, defendants' motion for summary judgment will be granted as to Count I of the complaint.
In Count II, plaintiff alleges that defendant Jets breached the 1976 contract by refusing to pay plaintiff's salary for the 1976 season, unilaterally terminating the contract, refusing to pay medical expenses, refusing to pay travel expenses and refusing to exercise the option to renew the contract.
On November 7, 1974, plaintiff and defendant Jets entered into three separate contracts: one covered the time period from November 7, 1974 through May 1 following the close of the football season commencing in 1974 [the 1974 contract]; one covered the time period from May 1, 1975 until May 1 following the close of the football season commencing in 1975 [the 1975 contract]; and the last covered the time period from May 1, 1976 until May 1 following the close of the football season commencing in 1976 [the 1976 contract]. The 1976 contract, which is the subject of Count II of the complaint, provides in pertinent part:
3. For: the Player's services as a skilled football player during the term of this contract; his agreement not to play football or engage in activities related to football for any other person, firm, corporation or institution during the term of this contract; the option hereinafter set forth giving the Club the right to renew this contract; and all other undertakings of the Player herein; the Club promises, subject to Paragraph 7 hereof, to pay the Player each football season during the term of this contract, unless compensation is changed under Paragraph 10 hereof, the amount of $65,000.00 . . ..
. . . . .
In addition, the Club agrees to pay: the reasonable board and lodging expenses of the Player incurred in pre-season training and/or while playing pre-season and/or regularly scheduled League games for the Club in other than the Club's home city; and all proper and necessary traveling expenses of the Player en route to and from said games in other than the Club's home city.
. . . . .
6. The Player represents and warrants that he is and will continue to be sufficiently highly skilled in all types of football team play, to play professional football of the caliber required by the League and by the Club, and that he is and will continue to be in excellent physical condition, and agrees to perform his services hereunder to the complete satisfaction of the Club and its Head Coach. Player shall undergo a complete physical examination by the Club physician at the start of each training session during the term hereof. If Player fails to establish his excellent physical condition to the satisfaction of the Club physician by the physical examination, or (after having so established his excellent physical condition) if, in the opinion of the Head Coach, Player does not maintain himself in such excellent physical condition or fails at any time during the football seasons included in the term of this contract to demonstrate sufficient skill and capacity to play professional football of the caliber required by the League, or by the Club, or if in the opinion of the Head Coach the Player's work or conduct in the performance of this contract is unsatisfactory as compared with the work and conduct of *1237 other members of the Club's squad of players, the Club shall have the right to terminate this contract.
7. Upon termination of this contract the Club shall pay the Player only the balance, if any, remaining due him for traveling, board and lodging expenses and for football seasons completed prior to termination, and if termination takes place during a season, the balance, if any, remaining due him on that portion of his total compensation for that season as provided in ¶ 3 or ¶ 10 hereof, whichever is applicable, which the number of regularly scheduled League games already played by the Club during that season bears to the total number of League games scheduled for the Club for that season.
. . . . .
10. The Club may, by sending notice in writing to the Player, on or before the first day of May following the football season referred to in ¶ 1 hereof, renew this contract for a further term of one (1) year on the same terms as are provided in this contract . . ..
. . . . .
14. In the event that Player is injured in the performance of his services under this contract, and if Player gives written notice to the Club Physician of such injury within thirty-six (36) hours of its occurrence, the Club will: (1) provide, during the term of this contract, such medical or hospital care as, in the opinion of the Club Physician, may be necessary; and (2) continue, during the term of this contract, to pay Player his salary as provided in ¶ 3 or ¶ 10 hereof, whichever is applicable if and so long as it is the opinion of the Club Physician that Player, because of such injury, is unable to perform the services required of him by this contract.
. . . . .
18. This agreement has been made under and shall be governed by the laws of the State of New York.
Plaintiff alleges in his complaint that he sustained a serious and permanent injury to his ankle in the course of playing professional football on September 28, 1975. He further alleges that on July 22, 1976, defendant Jets unilaterally terminated his contract as a result of the injury.
Defendant Jets clearly had the contractual right to terminate plaintiff because of his injury if he were unable to establish, to the satisfaction of the Club physician, his excellent physical condition. Plaintiff does not allege that he was, in fact, in excellent condition. Thus, the Court concludes that the termination of the 1976 contract was not improper. See Hennigan v. Chargers Football Company, 431 F.2d 308, 318 (5th Cir. 1970).
Plaintiff also asserts that defendant Jets breached the contract by refusing to pay his salary for the 1976 season. The contract, however, clearly specifies that payment of salary is due only for his services under the term of the contract, or any balance owing thereunder upon termination. Since the contract was terminated prior to the performance of any services thereunder, no payments can be made. Similarly, plaintiff's claim that defendant breached the 1976 contract by refusing to pay medical expenses and travel expenses is without merit. The 1976 contract clearly states that medical payments are due only for injuries incurred in the performance of services "under this contract". Since plaintiff's injury predated the 1976 contract, there can be no breach of the 1976 contract for failure to pay medical expenses. Sample v. Gotham Football Club, Inc., 59 F.R.D. 160, 165 (S.D.N.Y.1973).
Plaintiff has admitted in deposition that the claim that defendant Jets breached the contract by failing to pay travel expenses owing under the 1976 contract is without merit.
Equally without merit is plaintiff's claim that defendant Jets breached the contract by failing to exercise the option to renew the contract. The option clause states that "[t]he Club may" renew the contract. The Court fails to see how this discretionary right, vested in defendant Jets, can form the basis of a claim of breach of contract.
*1238 In Count III, plaintiff asserts that defendant Jets breached its implied covenant not to impair plaintiff's rights to receive the benefits of the contract by wrongfully concealing from plaintiff the true nature of his physical condition and injury. In Brinkman v. Buffalo Bills Football Club, etc., 433 F.Supp. 699 (W.D.N.Y.1977), the plaintiff brought suit asserting failure to provide required medical care in breach of the contract, negligent failure to provide medical care, and negligent pronouncement that the plaintiff was able to pay. The court held that such claims were barred by virtue of the New York State's Workmen's Compensation Law:
Plaintiff argues that the gravamen of each cause of action is breach of contract and in no way concerns issues that might be raised in a proceeding under the Workmen's Compensation Law. Such a characterization by plaintiff of his causes of action attempts to circumvent the public policy as expressed in the Workmen's Compensation Law. The relationship between an employee and his employer is contractual and any cause of action by either for damages arising out of that relationship is a cause of action for breach of contract. It is the nature of the damages which determines whether workmen's compensation is the exclusive remedy. An action for bodily injury is barred. Therefore, a claim for bodily injury due to negligent medical treatment, which is the essence of all of plaintiff's causes of action . . ., by defendant's employee is barred. Id. at 702.
Accordingly, the Court concludes that defendants' motion for summary judgment should be granted with reference to Count III as well.
Appropriate orders will issue.