KEY BANK OF NORTHERN NEW YORK, N. A., Respondent, v
LAKE PLACID COMPANY et al., Appellants, and NORTH
MISSISSIPPI SAVINGS AND LOAN ASSOCIATION et al.,
Respondents, et al., Defendants.

Third Department, July 26, 1984

### APPEARANCES OF COUNSEL

*Briggs, Dwyer & Smith, P.C.* (*Ronald J. Briggs* and *Edward P. Finnerty* of counsel), for appellants.

*Fischer, Hughes, Bessette & Edwards; Hiscock, Lee, Rogers, Henley & Barclay* (*Richard K. Hughes* of counsel; *Frederick F. Shantz* and *Jack W. Murphy* on the brief); *Poskanzer, Hessberg, Blumberg, Dolin, Barba, Greisler & Trombly* (*Anthony J. Carpinello* of counsel), for Key Bank of Northern New York, N. A., and others, respondents.

*James M. Brooks* for North Mississippi Savings and Loan Association, respondent.

*Tabner & Carlson* (*David S. Mackay* of counsel), for John W. Tabner and others, respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

This action was commenced to foreclose on four mortgages given to plaintiff's predecessor by Lake Placid Company (Lake Placid) on property known as Lake Placid Club Resort located in Essex County. Approximately 97% of the stock of Lake Placid was owned by the Lake Placid Education Foundation (Foundation) when, in February of 1980, Lake Placid filed for arrangement pursuant to the Bankruptcy Act. Under the terms of a plan of arrangement, Massanutten Village, Inc. (Massanutten),[1] purchased the Foundation's interest in Lake Placid by way of a down payment and a promissory note secured by a stock pledge agreement which was held by plaintiff's predecessor as escrow agent. Massanutten guaranteed collection of the four mortgage loans. Massanutten's intention was to refurbish the existing facilities and construct new housing units which would be offered on a time-share basis. In further-

---

1. Massanutten has since changed its name to First Federal Corporation. In this decision, it will be referred to by the former name.

ance of this plan, Massanutten had Lake Placid convey, subject to plaintiff's mortgages, various parcels of land to Lake Placid Club Lodges, Inc. (Lodges), the corporation which was to be the sponsor of the time-share offer and which was wholly owned by Massanutten.

In April of 1982, Lake Placid and Massanutten entered into another loan agreement with North Mississippi Savings and Loan Association (North Mississippi), which was secured by a wrap-around mortgage on the property of Lake Placid. Plaintiff consented to this transaction, by which North Mississippi assumed the four mortgages which are the subject of this action.[2] From May 1, 1982 to February 1, 1983, North Mississippi made timely payments to plaintiff.

During this time, Lake Placid and Massanutten hired G. Alan Cruickshank and three entities operated by him to perform development, construction and supervisory work at the resort and the lodges. Certain payments were made for work performed. Prior to this time, Cruickshank had obtained a line of credit from Key Bank of Albany, a banking association independent of plaintiff but, like plaintiff, owned by Key Banks, Inc. As security, Cruickshank had assigned to Key Bank of Albany present and future accounts receivable. After Cruickshank died in November of 1982, Key Bank of Albany became aware that Cruickshank's records showed that Massanutten owed Cruickshank's entities about $700,000 for work performed at the Lake Placid resort and another resort operated by Massanutten. Key Bank of Albany so informed John Swaim, principal officer of Massanutten, Lake Placid and Lodges, but Swaim denied that the amount was due. After negotiations proved fruitless, mechanics' liens were filed against the property on January 27, 1983 by representatives of Cruickshank's estate.

At about this time, Massanutten began suffering financial problems due in part to an action by the Attorney-General which prevented the sale of further time-share units, the expense of the construction at the site and the inability of Massanutten and North Mississippi to com-

2. North Mississippi also assumed another prior mortgage given to Union National Bank of Pittsburgh.

plete the loan agreement for the full amount originally contemplated. Additionally, Lake Placid became delinquent in the payment of real estate taxes and the Internal Revenue Service filed two Federal tax liens. In January of 1983, plaintiff, as escrow agent of the stock pledge agreement for the Foundation, informed the Foundation that Massanutten had not made its December 31, 1982 payment. When the default was not cured, the stock certificates were returned to the Foundation on February 16, 1983 pursuant to the terms of the escrow agreement.

In late February of 1983, representatives of plaintiff met in Mississippi with representatives of North Mississippi and the Foundation, as well as representatives of the State of Mississippi, to discuss the financial instability of North Mississippi. It was disclosed at that meeting that Lake Placid and Massanutten were nine months in arrears in payments on the wrap-around mortgage. Ultimately, North Mississippi did not attempt to foreclose on the wrap-around mortgage, nor did it make the March, 1983 payment to plaintiff pursuant to its assumption of the four mortgages held by plaintiff. Plaintiff them commenced this foreclosure action in April of 1983 against Lake Placid, Massanutten and Lodges, as well as against North Mississippi.[3] Plaintiff also named as defendants numerous other parties who may have claims against the mortgaged property, including three of Cruickshank's entities.

Lake Placid, Massanutten and Lodges answered and asserted counterclaims against plaintiff, cross claims against North Mississippi and G. Alan Limited, one of Cruickshank's entities, and independent claims against Key Banks, Inc., Key Bank of Albany, individual officers of plaintiff and Key Bank of Albany and the representatives and attorney of Cruickshank's estate.[4] These claims al-

---

3. The unpaid principal balance is $3,526,144.70.

4. The individual claims are variously characterized as "counterclaims" and "cross claims". It must be kept in mind that a counterclaim is a claim interposed by a defendant against a plaintiff (CPLR 3019, subd [a]). Thus, the only counterclaims interposed in this action are those against plaintiff. The claims against North Mississippi and G. Alan Limited are properly denominated cross claims since those parties are named defendants (CPLR 3019, subd [b]). The remaining actions asserted by Lake Placid, Massanutten and Lodges are neither counterclaims nor cross claims. The objects of those actions are not third-party defendants since the actions are clearly not in the nature of indemnification or contribution, or in any other way related to plaintiff's action. They are merely independent causes of action.

leged causes of action for abuse of process, prima facie tort, interference with contractual relations, defamation, injurious falsehood and breach of contract. Such conduct was also set forth as affirmative defenses to plaintiff's foreclosure action.

North Mississippi moved to substitute its successor corporation and to dismiss the cross claims against it. The other parties who were objects of the counterclaims, cross claims and independent claims moved to dismiss those claims. Lake Placid, Massanutten and Lodges moved for various forms of relief including a preliminary injunction, the appointment of a receiver, the fixing of a bond, a stay and an order requiring Cruickshank's estate to commence a foreclosure action on its liens. Several of the parties also made motions relating to discovery.

Special Term granted North Mississippi's substitution motion and dismissed the cross claims against it. Special Term also dismissed all of the counterclaims, cross claims and independent claims with the exception of a cause of action for breach of contract against G. Alan Limited and Cruickshank's estate. This cause of action was severed from the foreclosure action. Finally, Special Term denied the motions of Lake Placid, Massanutten and Lodges, and also denied the discovery-related motions. Lake Placid, Massanutten and Lodges have appealed.[5]

Initially, we hold that Special Term properly treated the motion by plaintiff, one of its officers and Key Banks, Inc., as one for summary judgment. Special Term did not give the parties notice that it was treating the motion as one for summary judgment as required by CPLR 3211 (subd [c]). Whether this was proper depends on (1) whether issue had been joined, (2) whether the motion papers are silent as to the type of motion presented, and (3) whether the parties treated the motion as one for summary judgment (*Guzzo v Easterntech Electronics*, 86 AD2d 717). With regard to the first criterion, appellants contend that issue has not been joined since, while responsive pleadings were served in response to the original answer and counterclaims, the amended answer and counterclaims had not

---

5. The term "appellants" shall be used for reference to Lake Placid, Massanutten and Lodges.

been responded to. We reject this contention since appellants did not obtain leave of court to serve the amended answer, nor was amendment as of right permitted since the amended answer was not served within 20 days after service of the reply by plaintiff, its employee and Key Banks, Inc. (CPLR 3025, subd [a]). Thus, the amended answer cannot be considered. While there was no motion made to strike the amended answer, such relief is rendered necessary by appellants' contention that summary judgment was precluded by the lack of joinder of issue. The amended answer must be stricken. As a result, issue had been joined at the time Special Term decided the motion. Dealing with the other criteria of *Guzzo,* it is apparent that motion papers did not specify whether the motion was pursuant to CPLR 3211 or 3212. However, the papers clearly stated that dismissal of the claims presented in the answer was sought. Thus, the parties treated the motion as, essentially, one for summary judgment.

■ Dealing with the merits of the dismissal motions, we turn first to the claims against plaintiff, Key Banks, Inc., Key Bank of Albany and the several officers of those corporations. First, appellants have failed to state a cause of action for abuse of process. The requirements of that tort are (1) regularly issued process, civil or criminal, compelling performance or forebearance of a prescribed act, (2) motivation by a purpose to do harm which is without what has been traditionally described as economic or social excuse or justification, and (3) defendant seeking some collateral advantage or corresponding detriment to plaintiff which is outside the legitimate ends of the process (*Board of Educ. v Farmingdale Classroom Teachers Assn.,* 38 NY2d 397, 403). Additionally, a plaintiff must allege and prove actual or special damages (*supra,* at p 405). Here, plaintiff's commencement of this action and filing of a notice of pendency cannot be the basis of an abuse of process claim since it is clear that plaintiff held mortgages which became in default and this action is the proper legal means to litigate such matter. Additionally, the filing of mechanics' liens in this case cannot form the basis for an abuse of process action against Key Bank of Albany, since it was the representative of Cruickshank's estate and not

the bank which filed the liens. Moreover, while appellants claim that the liens were greatly exaggerated and that they were filed against property owned by Lodges when it was admitted that contracts with Cruickshank were with Lake Placid and Massanutten, it is clear that the liens were not filed for a *collateral* purpose. It is apparent that the liens were filed to enforce claims made for work performed on the property. This is precisely the purpose of a mechanic's lien.

■ With regard to the cause of action for prima facie tort, while the existence of a traditional tort does not foreclose the alternative pleading of prima facie tort (*Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314, 333), a plaintiff must demonstrate the infliction of intentional harm resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful (*ATI, Inc. v Ruder & Finn,* 42 NY2d 454, 458). Appellants' papers contain nothing more than conclusory allegations regarding unlawful motives of its adverse parties. Moreover, appellants failed to plead or set forth evidence of actual or special damages. For these reasons, the cause of action for prima facie tort was properly dismissed.

■ Appellants also allege a cause of action for intentional interference with contractual relations. The elements of such a cause of action are (1) the existence of a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procuring of the breach of the contract, and (4) damages (*Israel v Wood Dolson Co.,* 1 NY2d 116, 120). Here, appellants offer three contracts as the basis for their cause of action: the loan agreement between North Mississippi and appellants, the stock pledge agreement between Massanutten and the Foundation in which plaintiff served as escrow agent, and the notes and mortgages between plaintiff and Lake Placid. There can be no cause of action based on the first contract since it is clear from the papers that any breach of that contract occurred well before the February, 1983 meeting in Mississippi. There are no facts to indicate that plaintiff, Key Banks, Inc., or Key Bank of Albany engaged in any conduct prior to the meeting which interfered with any contract between appellants and North Mississippi. Appel-

lants also fail to set forth a cause of action for intentional interference with the stock pledge agreement. Plaintiff's action in returning the stock certificates was pursuant to the clear terms of the escrow agreement. This fact is not altered by appellants' allegation that the escrow agreement was modified, since the escrow agreement provides that modifications must be accomplished with the written consent of all parties. Finally, the notes and mortgages between plaintiff and Lake Placid cannot be the subject of an intentional interference with contractual relations cause of action. Plaintiff cannot be liable under this cause of action since it was a party to the contract (*Manley v Pandick Press,* 72 AD2d 452, app dsmd 49 NY2d 981) and there are insufficient allegations that Key Banks, Inc., or Key Bank of Albany had anything to do with this contract. Thus, the cause of action for intentional interference with contractual relations was properly dismissed.

■ Special Term properly dismissed the causes of action for defamation and injurious falsehood since appellants did not make specific allegations with regard to the publication requirement of these causes of action.

■ Since appellants have stated no cause of action against plaintiff, Key Banks, Inc., or Key Bank of Albany, the causes of action against the individual officers as agents of these corporations must also fail. Further, appellants fail to set forth sufficient allegations to support causes of action against them as individuals.

■ Next, we hold that Special Term improperly dismissed the affirmative defenses asserted by appellants. As indicated earlier, several of the allegations which formed the bases for appellants' counterclaims, cross claims and independent claims were also offered as affirmative defenses to plaintiff's foreclosure action. Special Term, in concluding that the claims were without merit, dismissed the affirmative defenses along with the counterclaims, cross claims and individual claims. The motions to dismiss were directed against the claims asserted by appellants. There was no motion by plaintiff, pursuant to CPLR 3211 (subd [b]), to dismiss any affirmative defenses. A motion to dismiss a counterclaim does not "search the record" to allow a court to dismiss defenses (*Croce v Alicakos,* 45

AD2d 970, 971; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3211:42). Support for Special Term's action cannot be found in CPLR 3017 (subd [a]), which provides that a court may grant undemanded relief if there is no substantial prejudice to the adverse party (*Ressis v Mactye,* 98 AD2d 836, 837). By virtue of the motions before Special Term, appellants were on notice that their affirmative claims against plaintiff and the other various parties were under attack. However, they were not in a position to realize that their defenses to the foreclosure action were subject to challenge. Therefore, Special Term erred in dismissing the affirmative defenses.

■ Appellants also contend that Special Term incorrectly dismissed their cross claims against North Mississippi. North Mississippi moved to dismiss the cross claims on the grounds of lack of personal jurisdiction (CPLR 3211, subd [a], par 8), *forum non conveniens* (CPLR 327) and another action pending (CPLR 3211, subd [a], par 4). North Mississippi also moved alternatively to dismiss one of the cross claims for failure to state a cause of action (CPLR 3211, subd [a], par 7). Special Term granted the motion on all three procedural grounds. It did not address the last ground. In our view, personal jurisdiction over North Mississippi was established. Special Term's reliance on the "corporate presence" test was misplaced since appellants were not relying on the presence of North Mississippi in the State as the jurisdictional basis, but, rather, on long-arm jurisdiction (see Siegel, NY Prac, § 82, p 93). CPLR 302 (subd [a]) provides:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent:

"1. transacts any business within the state or contracts anywhere to supply goods or services in the state".

With respect to contract litigation, "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with" the State (*McGee v International Life Ins. Co.,* 355 US 220, 223). Even where the formal execution of a contract took place outside New York, "the statutory test may be satisfied by a

showing of other purposeful acts performed * * * in this State in relation to the contract, albeit preliminary or subsequent to its execution" (*Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, 457, cert den *sub nom. Estwing Mfg. Co. v Singer,* 382 US 905). In the instant case, the wrap-around mortgage was secured by property located in New York, the mortgage was recorded in New York and one of the mortgagors, Lake Placid, is a New York corporation. Additionally, as part of the contract, North Mississippi agreed to assume payments on the primary mortgage which was purely a New York transaction involving New York parties. Thus, in this case, the requirements of CPLR 302 (subd [a], par 1) for long-arm jurisdiction have been met.

■ Further, we are of the view that New York is not an inconvenient forum. While it is true that representatives of North Mississippi may be inconvenienced by having to travel to New York, it would be equally inconvenient for representatives of appellants as well as witnesses to travel to Mississippi. Moreover, North Mississippi already has to come to New York as a defendant in plaintiff's foreclosure action and it would not be significantly more inconvenient to defend against appellants' cross claims at the same time.

■ Dismissal of the cross claims is also not warranted because of another action pending in Mississippi. Dismissal on such ground is not automatic (CPLR 3211, subd [a], par 4). The Federal court in Mississippi has already dismissed the action commenced there on the ground that this State is the more appropriate forum. While it appears that such court would reconsider its decision in the event the action in this State is dismissed, it is apparent that both the Federal court in Mississippi and this court feel that this matter ought to be litigated in New York. It would, therefore, be improper to dismiss this action on the ground of another action pending.

■ Since Special Term dismissed the cross claims against North Mississippi on procedural grounds, it did not deal with the alternative motion to dismiss the first cross claim for failure to state a cause of action. In light of our decision, this motion must be addressed. The first cross claim is a rambling series of allegations against all of

appellants' adverse parties regarding concerted acts to violate various contract rights of appellants. The fact that a complaint is poorly drafted is not fatal so long as a reading of its allegations reveals a cause of action cognizable at law. However, under no reading does the first cross claim state any cause of action against North Mississippi. The allegations are insufficient to support any claim that North Mississippi conspired with any other party to violate any of appellants' contract rights. Therefore, the first cross claim must be dismissed as against North Mississippi.

■ We now turn to the Cruickshank defendants. The cause of action against his estate and entities for abuse of process based on the filing of the mechanics' liens was properly dismissed. Appellants' remedy for the filing of the allegedly exaggerated lien is found in section 39-a of the Lien Law, which provides penalties for such a filing (*E-J Elec. Installation Co. v Miller & Raved,* 51 AD2d 264, app dsmd 39 NY2d 898). Moreover, as discussed earlier with regard to Key Bank of Albany, the gist of abuse of process is the use of such process for a purpose other than that for which it was intended (see Interim Topics, NY Jur 2d, Abuse of Process, § 3, pp 56-58). Here, while appellants raise the issue of exaggerated amounts and filing against the incorrect one of the associated corporations, it is apparent that the purpose for filing the liens was proper, i.e., to secure debts allegedly due for work done on the property.

■ The claim against Cruickshank's attorney must also fail. An attorney may be held liable to third parties for fraud or collusion or for a malicious or tortious act (*Gifford v Harley,* 62 AD2d 5, 7). However, the facts here do not support such a cause of action. Appellants claim that the attorney was aware that amounts claimed to be due Cruickshank were exaggerated. However, the attorney's duty was to represent his client. He was not bound to accept appellants' word that the full amount claimed was not due. It may be different if an attorney has unquestionable proof that no money is owed, yet still files a mechanic's lien for his client. That is not the case herein. At the time the liens were filed, there was a legitimate disagreement over what amount, if any, was due. Additionally, the fact that the liens were filed against property owned by Lodges does not

give rise to a cause of action against the attorney. Lake Placid, Lodges and Massanutten are associated corporations, and the lands technically owned by Lake Placid and Lodges are situated near each other. Thus, there may have been a legitimate uncertainty regarding the precise property on which work was done. This problem was obviously compounded by the unavailability of Cruickshank to offer information on these matters. It is clear, therefore, that the circumstances negate the sort of fraudulent or malicious intent necessary to sustain a cause of action against the attorney.

The order should be modified, on the law, without costs, by reversing so much thereof as (1) dismissed the affirmative defenses asserted by Lake Placid Company, Massanutten Village, Inc., and Lake Placid Club Lodges, Inc., and (2) granted the motion by North Mississippi Savings and Loan Association to dismiss the cross claims asserted against it; amended answer of Lake Placid Company, Massanutten Village, Inc., and Lake Placid Club Lodges, Inc., stricken, affirmative defenses of Lake Placid Company, Massanutten Village, Inc., and Lake Placid Club Lodges, Inc., reinstated and motion by North Mississippi Savings and Loan Association to dismiss cross claims against it granted only to the extent of dismissing the first cross claim; and, as so modified, affirmed.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Order modified, on the law, without costs, by reversing so much thereof as (1) dismissed the affirmative defenses asserted by Lake Placid Company, Massanutten Village, Inc., and Lake Placid Club Lodges, Inc., and (2) granted the motion by North Mississippi Savings and Loan Association to dismiss the cross claims asserted against it; amended answer of Lake Placid Company, Massanutten Village, Inc., and Lake Placid Club Lodges, Inc., stricken, affirmative defenses of Lake Placid Company, Massanutten Village, Inc., and Lake Placid Club Lodges, Inc., reinstated and motion by North Mississippi Savings and Loan Association to dismiss cross claims against it granted only to the extent of dismissing the first cross claim; and, as so modified, affirmed.