Michael **DRAGONE**, et al., Plaintiffs,

v.

**M.J. RAYNES, INC.**, et al., Defendants.

No. 87 Civ. 7617 (JMW).

United States District Court,
S.D. New York.

April 12, 1988.

---

Stanley F. Meltzer, of counsel, Edward J. Madigan, on the brief, Meltzer & Fishman, New York City, for plaintiffs.

Ira A. Sturm, Manning, Raab, Dealy & Sturm, New York City, for defendants.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Plaintiffs originally brought this action in state Supreme Court for the County of New York. The case was removed to this Court in October 1987, upon the defendants' petition for removal based on Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), codified at 29 U.S. C. § 185 ("Section 301").[1]  Currently before the Court is plaintiffs' motion to remand this case to the Supreme Court for lack of subject matter jurisdiction. For the reasons stated below, plaintiffs' motion is denied.

## FACTS

From May 1985 until November 1986, Plaintiff Michael Dragone ("Dragone") was superintendent of the residential apartment building located at 10 East End Avenue, New York, New York ("Building"). Defendant M.J. Raynes, Inc. ("Raynes") was the managing agent of the Building.

A member of Local 32B–32J, Service Employees International Union ("Union"), Dragone was a party to a collective bargaining agreement between the Union and the Realty Advisory Board on Labor Relations of which Raynes was a member ("Agreement"). The Agreement, in typical fashion, requires that Dragone be a member of the Union and maintain that membership in good standing throughout his tenure as superintendent. Failure to pay union dues is grounds for termination according to the procedure outlined in Article I of the Agreement.

In early September 1986, Dragone received a letter from the Union informing him of an alleged delinquency in his payment of union dues. On November 11, 1986, because union records allegedly showed that Dragone remained delinquent in paying his dues, union officials requested that Dragone be immediately terminated. Accordingly, on November 14, 1986, Raynes discharged Dragone. Dragone alleges that both the Union and Raynes were aware that he had paid his dues but fired him anyway.

As a result of his discharge and the alleged activities of the defendants thereafter, Dragone and his wife brought this action in state court alleging tortious interference with contract, slander, libel, wrongful discharge, intentional infliction of emotional distress, defamation, and loss of services. As noted, defendants removed the case to this Court.

---

**1.** Section 301 provides,

    Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Plaintiffs now contend that this action should be remanded to state court because this Court lacks subject matter jurisdiction. Relying on the "well-pleaded complaint" doctrine, plaintiffs maintain that all of their causes of action are based on state, not federal, law and therefore the case must be remanded. Defendants counter that § 301 preempts plaintiffs' claims, thereby giving rise to federal jurisdiction.

## DISCUSSION

The dispositive issue in this motion is whether the plaintiffs' state law claims arising out of the termination of Dragone's employment are preempted by § 301, thus creating federal question jurisdiction. The resolution of this issue will require the Court to examine the Supreme Court's precedents concerning the interpretation of § 301 as well as the application of the doctrine of preemption to claims based on § 301.

The Court begins its analysis with *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), in which the Supreme Court held that Congress intended § 301 to do more than create jurisdiction in the federal courts for suits alleging violations of collective bargaining agreements. Rather, the ultimate purpose of § 301, the Court concluded, is to empower the federal courts to "fashion from the policy of our national labor laws" a body of federal law for the interpretation and enforcement of collective bargaining agreements. *Id.*, at 456, 77 S.Ct. at 917–18. Five years later *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), held that federal law must be applied to all disputes based on § 301 claims, regardless of the forum of the action. In *Lucas Flour*, the Court committed itself to the development of a uniform body of law as to such claims and reached the conclusion that if the states were left with control over the interpretation and enforcement of collective bargaining agreements, "a disruptive influence upon both the negotiation and administra-

tion of collective agreements" would result. 369 U.S. at 103, 82 S.Ct. at 576–77.

Although the Court by 1962 had decided that exclusively federal law would apply to § 301 disputes, it was not until *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), that the Court defined the broad scope of cases preempted by § 301:

> The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract ... Our analysis must focus, then on whether the ... tort action ... confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.

*Id.*, at 211–13, 105 S.Ct. at 1911–12. *Accord, International Brotherhood of Electrical Workers, AFL–CIO v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).

Based on the forgoing authorities, we are instructed that a determination as to whether the suit is preempted requires an inquiry into the terms of the collective bargaining agreement, the nature of the state action with emphasis on its relationship to the agreement, and the federal and state policies affected by the dispute. In both

*Allis–Chalmers* (tort of bad faith handling of insurance claim) and *Electrical Workers* (breach of duty to ensure a safe workplace), the Court found the state actions preempted by § 301. On the other hand, in *Caterpillar Inc. v. Williams,* —— U.S. ——, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), breaches of employment contracts other than a collective bargaining agreement were held not preempted. *Accord, Baldracchi v. Pratt & Whitney Aircraft Division, United Technologies Corp.,* 814 F.2d 102 (2d Cir.1987) (§ 301 does not preempt action based on state law prohibiting the discharge of an employee for filing a workers' compensation claim).

The Supreme Court has also recently explained the jurisdictional mechanics that affect a motion to remand. Typically, the "well-pleaded complaint" rule, clearly enunciated in *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed.2d 1218 (1914), limits federal jurisdiction to those instances when a federal action is apparent on the face of the complaint. Federal courts lack jurisdiction if the only basis for jurisdiction is an anticipated federal defense to the suit. *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). However, the Supreme Court has held that the "well-pleaded complaint" rule is limited by the "independent corollary" that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board of California v. Construction Laborers Vacations Trust for Southern California,* 463 U.S. 1, 22, 103 S.Ct. 2841, 2852–53, 77 L.Ed.2d 420 (1983). Thus, if an area of state law is completely preempted by federal law, any claim based on that preempted area of law, however pleaded, is by definition a federal claim and thereby one arising under federal law. *Caterpillar, Inc.,* 107 S.Ct. at 2430; *Franchise Tax Board,* 463 U.S. at 24, 103 S.Ct. at 2854.

The complete preemption corollary is most frequently applied to cases based on § 301 of LMRA. In 1967, the Supreme Court affirmed a decision of the Sixth Circuit Court of Appeals holding that claims arising under § 301 are completely preempted by federal law and are, therefore, properly brought in federal court, notwithstanding the failure of the complaint to plead a federal action. *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists and Aerospace Workers,* 376 F.2d 337, 340 (6th Cir.1967) ("all rights and claims arising from a collective bargaining agreement ... arise under Federal law. State law does not exist as an independent source of private rights to enforce collective bargaining contracts."), *aff'd.,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 *reh'g denied,* 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670 (1968); *Franchise Tax Board,* 463 U.S. at 23, 103 S.Ct. at 2853–54 ("the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.") (footnote omitted); *Caterpillar Inc.,* 107 S.Ct. at 2430.

Turning to the case at bar, the Court concludes that this action was properly removed to federal court. At least two of Dragone's causes of action are completely preempted by federal law, thereby serving as a basis for federal jurisdiction. Plaintiffs' fourth cause of action alleges that Dragone was wrongfully discharged from his job. New York only recognizes a wrongful discharge suit based upon the clear terms of an employment contract. *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 212–13, 506 N.E.2d 919, 921–23 (1987); *Poklitar v. CBS, Inc.,* 652 F.Supp. 1023, 1029–30 (S.D.N.Y.1987); *Brinkman v. Buffalo Bills Football Club —Division of Highwood Service, Inc.,* 433 F.Supp. 699, 702 (W.D.N.Y.1977); *Cornell v. T.V. Development Corp.,* 17 N.Y.2d 69, 268 N.Y.S.2d 29, 32, 215 N.E.2d 349, 351 (1966). The courts of New York have consistently refused to recognize a tort for wrongful discharge. *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Accordingly, the wrongful discharge action will involve an analysis of the employment

contract, here the Agreement. Indeed, the claim is possible only if the Agreement creates obligations which were broken. Thus, here, as in *Allis–Chalmers* and *Electrical Workers*, "questions of contract interpretation ... underlie any finding of ... liability." *Allis–Chalmers*, 471 U.S. at 218, 105 S.Ct. at 1915. The policy of uniform interpretation of collective bargaining agreements compels the conclusion, therefore, that plaintiffs' state law claim of wrongful discharge is preempted by § 301.

Plaintiffs' first cause of action alleges tortious interference with Dragone's contractual rights under the Agreement. The elements of such a tort under New York law are "the existence of a valid contract, the defendant's knowledge of that contract, the defendant's intentional procuring of a breach of that contract, [and] an actual breach of the contract and damages." *Kaminski v. United Parcel Service*, 120 A.D. 2d 409, 501 N.Y.S.2d 871, 873 (1986); *Key Bank of Northern New York, N.A. v. Lake Placid Co.*, 103 A.D.2d 19, 479 N.Y.S.2d 862, 868 *appeal dismissed*, 64 N.Y.2d 644, 485 N.Y.S.2d 49, 474 N.E.2d 257 (1984); *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, 99–100 (1956). Thus, once again, plaintiffs' cause of action derive from the collective bargaining agreement. To win a tortious interference suit, Dragone must prove that the Agreement was valid and that the Agreement was breached. Both of those inquiries, however, involve analysis of the Agreement, an area of law preempted by the force of § 301 of the LMRA.

Some courts in New York, however, have not required that the relevant contract be breached; instead, those courts have required "intentional interference with the performance of that contract by the third party without justification." *S & S Hotel Ventures Limited Partnership v. 777 S.H. Corp.*, 108 A.D.2d 351, 489 N.Y.S.2d 478, 480 (1985); *Stratford Materials Corp. v. Jones*, 118 A.D.2d 559, 499 N.Y.S.2d 172, 173 (1986). Nevertheless, any successful suit for tortious interference with a contract ultimately derives vitality from the contract itself. To determine whether a party has "intentional[ly] interfer[ed] with the performance" of the Agreement, Dragone will be forced to elucidate what obligations were owed to him, an inquiry based on interpretation of the collective bargaining agreement. In addition, while the courts have fashioned justifications for interference with contractual duties, those "justifications" are based upon the rights created by the contract and the interests of the parties to that contract. *Guard–Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 632, 406 N.E.2d 445, 448 (1980) (factors include "contractual interests of the party interfered with"); *Stratford*, 172 N.Y.S.2d at 173 ("Whether reasonable justification to interfere with the contract rights of another exists depends upon the nature of the rights interfered with ... and the social interests involved.") Clearly, such a state law action is preempted under § 301. The Supreme Court has concluded that Congress intended that a uniform body of law govern the interpretation and enforcement of collective bargaining agreements. To allow a state court to decide when those agreements may be justifiably interfered with would certainly "exert a disruptive influence upon the ... administration of collective bargaining agreements." *Lucas Flour*, 369 U.S. at 103, 82 S.Ct. at 576–77. Consequently, plaintiffs' first cause of action is preempted by § 301.

Since the Court concludes that at least two of plaintiffs' state law claims are preempted by § 301, this case was properly removed to this Court. Accordingly, plaintiffs' motion for remand is denied.[2] This

---

**2.** The cases plaintiffs cite in support of their motion are uniformly inapposite. For example, in *Billy Jack for Her, Inc. v. New York Coat Suit, Dress, Rainwear and Allied Workers' Union ILGWU, AFL–CIO, Local I–35, 10, 22, 48, 77, 89, and 189*, 511 F.Supp. 1180 (S.D.N.Y.1981), the court refused to remand the case. *Sanchez v. Trustees of the Pension Plan, Health & Welfare Plan, and Education Fund of the United Association of Journeymen and Carpenters of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union 198, AFL–CIO*, 419 F.Supp. 909 (M.D.La.1976), did not involve § 301 of LMRA.

case is scheduled for conference on April 29, 1988 at 2:30, p.m. in Courtroom 2704.

SO ORDERED.

---

**Editor's Note:** The opinion of the United States District Court in *Hedlund v. Products From Sweden, Inc.,* published in the advance sheet at this citation, 695 F.Supp. 725–730, was withdrawn from the bound volume and will be republished as corrected.