Harilal PATEL, M.D., Plaintiff,

v.

LUTHERAN MEDICAL CENTER,
INC., Defendant.

No. CV–88–2050.

United States District Court,
E.D. New York.

Dec. 24, 1990.

As Modified Jan. 29, 1991.

Hockert & Flamm, New York City, for plaintiff.

Wolff, Seminara & Mitherz, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff brings this action for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., New York Human Rights Law, Exec.Law § 296 et seq., and under state common law for tortious interference with contract.

Plaintiff alleges that he was employed by Lutheran Medical Center (LMC) as Chief of its Ambulatory Services Clinic until he was informed on June 23, 1987 of his termination effective July 28, 1987. Plaintiff alleges that he was harassed and terminated because of his age, and that he filed complaints on June 15, 1987 and July 6, 1987 against LMC with the Equal Employment Opportunity Commission (EEOC) based on age discrimination. He further alleges that in retaliation for his bringing a claim, LMC lured his employee, Dr. Kumar, from his business relationship with plaintiff, and that he filed a charge with the EEOC on March 29, 1989 for this retaliatory action.

His complaint alleges six causes of action. The first three, not at issue in this motion, are pursuant to the ADEA. The fourth cause of action is brought pursuant to the ADEA for retaliation by tortious interference with contract. The fifth cause of action is brought under New York Human Rights Law, Exec.Law § 296, a state employment discrimination statute. And the sixth cause of action is for common law tortious interference with contract. This motion to dismiss, based on multiple grounds, is aimed at part of the fourth and the entire fifth and sixth causes of action. Having evaluated each of those grounds, for the reasons below the court grants defendant's motion as to the fourth and sixth causes of action, and denies the motion as to the fifth.

I. *Prior State Proceeding.*

 Defendant first moves to dismiss that portion of plaintiff's fourth cause of action which alleges that defendant retaliated against him for bringing age discrimi-

nation charges by interfering with his employment contract with Dr. Kumar, on the ground that it is barred for plaintiff's failure to first bring this claim in a state proceeding. ADEA § 14(b), 29 U.S.C. § 633(b), provides that "no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law." Defendant is quite correct that the Second Circuit has "confirmed the need for the commencement of state proceedings as an essential prerequisite to the institution of a civil action in a federal court under ADEA." Defendant's Memorandum, at 6. However, the Second Circuit has also explicitly held that once a claim is brought before the proper state agency, a plaintiff need not file a second claim with such agency in order to assert that second claim in federal court if the claim is "reasonably related" to the initial claim. *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2nd Cir.1981). In that case, the court held:

Although § 14(b) of the ADEA, 29 U.S.C. § 633(b) (1976), requires a claimant to file a complaint with the appropriate state agency before proceeding in a federal court, *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the section is to be construed to accord with the similar requirements of § 706(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(c) (1976), 441 U.S. at 756, 99 S.Ct. at 2071. Under Title VII, we have held that a claimant need not file additional claims with the federal administrative agency when those claims, arising subsequent to the initial filing are reasonably related to the allegations of an initial claim that was properly filed. *Kirkland v. Buffalo Bd. of Ed.*, 622 F.2d 1066 (2nd. Cir.1980). Similarly here, we conclude that [plaintiff], having brought his age discrimination claim to the state agency, did not have to file a second

claim with that agency in order to assert his retaliation claim in federal court. *Id.* Defendant concedes that the initial claim was properly filed.[1] On the issue of what constitutes "reasonably related," *Kirkland* provides guidance. In that case, plaintiff's later claim, which the court permitted to be litigated, was found to be "reasonably related" when it was "in retaliation for [plaintiff's] initiation of litigation" over the employment discrimination claim. *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980). Since Patel's claim of tortious interference with contract is said in his fourth cause of action to be in retaliation for his filing charges of age discrimination with the EEOC, under *Kirkland* it is reasonably related. Thus, the court's holding in *Goodman v. Heublein* applies in this case to obviate the requirement of a prior state filing on this later claim. This ground for dismissal is therefore rejected.

II. *Statute of Limitations.*

a. The ADEA Statute of Limitations on Civil Actions.

██ Defendant next moves to dismiss the retaliation claim under § 626(d) on the ground that it is barred by the ADEA statute of limitations.

Limitation of actions under the ADEA is governed by 29 U.S.C. §§ 255, 259. 29 U.S.C. § 626(e). Section 255 provides that an action under the ADEA must be commenced "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255. Plaintiff, in his fourth cause of action, First Amended Complaint, states:

28. The actions of Defendant in terminating plaintiff and for inducing Dr. Kumar to terminate his relationship with Plaintiff were in retaliation for Plaintiff's having filed charges of age discrim-

---

1. Defendant's Memorandum, at 5, states:
 Inquiries of the New York State Human Rights Division ("HRS" or "the Division") and the EEOC have revealed that the initial charges of age, national origin and retaliation, filed in June and July, 1977 [sic, presumably

"1987" was intended], were filed and received by the New York State Human Rights Division, at the time of the initial filings, in keeping with EEOC regulations and the working-sharing agreement between EEOC and the Division.

ination with the EEOC and this suit and thus constituted willful violations of rights secured to Plaintiff by Sec. 623(d) of the ADEA.

Because "willfulness" is alleged, the claim is subject to the three year statute of limitations. The act complained of allegedly occurred in June or July 1988, and the complaint was filed on August 27, 1990. The complaint does, therefore, state a timely cause of action for retaliation.

b. 300–Day Limit on Filing of EEOC Claims.

■ Defendant also contends that plaintiff's fourth cause of action is barred as untimely because no charge was filed with the EEOC within 300 days of the alleged discrimination, pursuant to 29 U.S.C. § 626(d)(2). However, under the Second Circuit's holding in *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2nd Cir.1980), no subsequent claim need be filed with the EEOC when the basis of a subsequent claim would be reasonably related to that of an earlier claim timely filed:

> Under Title VII, we have held that a claimant need not file additional claims with the federal administrative agency when those claims, arising subsequent to the initial filing, are reasonably related to the allegations of an initial claim that was properly filed.

*Goodman v. Heublein*, 645 F.2d at 131 (noting that § 14(b) of the ADEA, 29 U.S.C. § 633(b), "is to be construed to accord with the similar requirements of § 706(c) of Title VII of the Civil Rights Act of 1964.") Thus, plaintiff did not have to file *at all* with the EEOC on the retaliation charge, let alone within 300 days. This basis for dismissal of part of the fourth cause of action is therefore rejected.

III. *Failure to State a Claim for Retaliation under the ADEA.*

■ Defendant next argues that tortious interference with the Patel–Kumar contract is not cognizable as a discriminatory

practice under the ADEA. Defendant's argument has two elements. First, defendant argues that the ADEA only bars discriminatory acts against employees, and that since the employment relationship between plaintiff and defendant was terminated on July 28, 1987, no cause of action can lie. Second, defendant argues that even if a cause of action could be asserted by a former employee for retaliation, it couldn't be based on this allegation of tortious interference with contract.

Defendants are clearly in error on the first argument. The Second Circuit has held that federal antidiscrimination statutes, such as the ADEA, prohibit "discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct." *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir.1978); *accord, Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Caruso v. Peat, Marwick, Mitchell & Co.*, 664 F.Supp. 144, 150 (S.D.N.Y. 1987).[2]

■ But the cases which stand for this proposition also demonstrate the limits of conduct cognizable as retaliation under the ADEA, and consistency with this line of cases requires that defendant's motion be granted as to plaintiff's fourth cause of action. The ADEA, 29 U.S.C. § 623(d), states:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

The courts of appeals have uniformly determined that three elements comprise a

---

**2.** While these cases involve Title VII claims, the relevant language of the ADEA and Title VII is nearly identical in its substantive prohibitory sections. Courts routinely rely on Title VII decisions in interpreting the comparable ADEA provisions. *See, e.g., Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

prima facie case of retaliatory discrimination under this section:

> [I]n order to establish [a claim for retaliation], the plaintiff must show: first, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and third, a causal connection between the first two elements, that is, a retaliatory motive playing a part in the adverse employment action.

*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). *Accord, Hamann v. Gates Chevrolet, Inc.*, 910 F.2d 1417 (7th Cir.1990); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir.1990); *Webster v. Department of the Army*, 911 F.2d 679 (Fed.Cir.1990); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986); *McDaniel v. Temple Independent School Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985). Defendants claim in their motion that the second element of the prima facie case has not been established; that is, that the alleged tortious interference with the Kumar–Patel contract, if there is one, does not constitute an employment action.

The court agrees. Plaintiff's claim, to the extent that it is based on the Hospital's alleged luring away of Dr. Kumar from his relationship with Dr. Patel, fails to allege an employment action required by the statute. The alleged action is not one which interferes with either plaintiff's current employment or in efforts he might be undertaking to secure future employment. Such interference is central to a claim of retaliation in the cases which have sustained that claim. In *Silver v. Mohasco Corp.*, 602 F.2d at 1090 (2d Cir.1979), for instance, "blacklisting" a terminated employee was held to be sufficient to state a claim for retaliation because it prevented the plaintiff from securing new employment. In *Pantchenko v. C.B. Dolge*, 581 F.2d at 1055, the fact that plaintiff's former employer refused to provide her with an employment reference in retaliation for EEOC charges stated a claim as well because it hampered her efforts to find new work after termination. In *Caruso v.*

*Peat, Marwick, Mitchell & Co.*, 664 F.Supp. at 150, an employer's discontinuation of a contract with employee, who was working for the employer as a consultant after termination, stated a claim because it interfered with plaintiff's current employment with the same employer.

In contrast, in *Passer v. American Chemical Soc'y*, 701 F.Supp. 1 (D.D.C. 1988), this element was lacking, and the court would not find retaliation under the ADEA. In that case, defendant had scheduled a national meeting at which a symposium in plaintiff's honor was planned. Two days before the meeting, defendant informed plaintiff that the symposium would be postponed *because of* plaintiff's pending age discrimination claims. In spite of defendant's admission of retaliatory motive, the district court held that such action by the defendant did not state a claim for retaliation:

> Although [29 U.S.C. § 623(d)] does not speak in terms of former employees, the Court finds plaintiff's arguments that former employees comprise a protected group persuasive. Nevertheless, the Court finds that defendant's alleged conduct—cancelling a symposium honoring plaintiff—is not retaliation as intended by the ADEA. Although in honor of plaintiff's service, the symposium was not part of plaintiff's past or future employment relationship with the defendant, nor did the cancellation affect his relationship with potential employers.

*Id.* at 3.

The law in this and other circuits compels this conclusion in the case at bar. There was no adverse employment action. Plaintiff was no longer in the employ of defendant, and had not been for roughly two years. Thus the action had no impact on plaintiff's current employment situation. Neither was he undertaking efforts to find a new job, so the alleged act in no way hindered prospective employment. Were the allegation of defendant's tort of interference with contract in this case sufficient to state a claim for retaliation, it would surely mock the uniform requirement of "employment action or actions." Loosely

viewed, the action has an impact on *an* employer-employee relationship, since it impacted the relationship of Dr. Kumar with plaintiff. But a claim of retaliation requires an impact on the *plaintiff's* ability to continue or procure employment. The alleged tort had no such impact, and none is claimed. The court therefore holds that plaintiff's fourth cause of action fails to state a claim insofar as it relies upon the allegation of tortious interference with contract and grants defendant's motion to dismiss it in part.

## IV. *Subject Matter Jurisdiction.*

Next, defendant moves to dismiss plaintiff's fifth and sixth causes of action for lack of subject matter jurisdiction by urging this court to reject the exercise of pendent jurisdiction over those claims. The fifth cause of action states:

> The actions of defendant, as hereinabove described, constitute violations of § 296(1)(a) and § 296(3–a)(a) of the [New York Human Rights Law].

The sixth cause of action states:

> The actions of Defendant as hereinabove described, constitute tortious interference with Plaintiff's contractual and advantageous business relationship then in effect between Plaintiff and Dr. Kumar.

First Amended Complaint, ¶¶ 30, 32. Defendant argues that these causes of action, and the facts alleged in paragraphs 18–21 and 27–28 of the First Amended Complaint, will "raise complex issues of facts and state laws, which will emerge as the predominant issues in this case." Defendant's Memorandum, at 12. Defendant cites a number of cases in which pendent jurisdiction has been declined by the federal court because of the confusion and complexity state claims would add to the federal discrimination litigation. However, the cases cited by both sides on this matter point to the conclusion that those courts which have rejected pendent jurisdiction as to New York state claims have rejected it as to state common law claims, i.e., claims other than those brought under New York antidiscrimination statutes. Finding the rea-

soning of these cases, as well as other considerations, compelling, the court finds it proper to exercise pendent jurisdiction over the New York Human Rights Law ("HRL") claim, but disavows pendent jurisdiction over the tortious interference with contract claim.

### a. The Human Rights Law Claim.

As noted in *Realmuto v. Yellow Freight System, Inc.*, 712 F.Supp. 287 (E.D.N.Y.1989), the Second Circuit has never decided whether a court should exercise pendent jurisdiction over a state law claim based on New York Human Rights Law when the underlying federal action is based on the ADEA. On this question the district courts are split.

In *Realmuto*, plaintiff brought suit under the ADEA, New York HRL, and for breach of contract and intentional infliction of emotional distress. Defendant moved to dismiss all but the federal claim. The court noted that the HRL allows recovery of compensatory damages, including damages for mental anguish, and that therefore an HRL claim could involve questions of plaintiff's mental state irrelevant to a violation of the ADEA. Because such proof could, in the court's view, prejudice the jury in plaintiff's favor, and could confuse the jury on the damages issues, the court favored rejecting pendent jurisdiction. The court finally rejected jurisdiction having been swayed by one more factor: Since compensatory damages are not available under the ADEA when a claim is undergoing informal conciliation at the EEOC, plaintiffs would have no incentive to settle at that stage if a HRL claim for compensatory damages could be asserted once they got to federal court.

The court in *Burger v. Health Insurance Plan of Greater New York*, 684 F.Supp. 46 (S.D.N.Y.1988), came to the same conclusion based only on the issue of confusion caused by the different entitlement to damages under the federal statute and the state statute. *See also, Giuffre v. Metropolitan Life Ins. Co.*, 129 F.R.D. 71 (S.D.N.Y.1989); *Deutsch v. Carl Zeiss, Inc.*, 529 F.Supp. 215, 219 (S.D.N.Y.1981) (rejecting pendent jurisdiction over a HRL claim for

compensatory damages because to assert it "would allow a claimant to do indirectly what he could not do directly").

But the opposite result has frequently been reached, on the theory that the considerations underlying the HRL claims are not different from those underlying the ADEA claims, and that the remedies issue is surmountable. On this basis, the court in *Kaczor v. City of Buffalo*, 657 F.Supp. 441 (W.D.N.Y.1987) asserted pendent jurisdiction over an HRL claim in a federal ADEA age discrimination suit stating,

> For the most part, the standard of proof for the state law claim mirrors that of the standard of proof for the ADEA claim. For the most part, the remedies are the same under both federal law and state law. The exception is recovery for emotional distress, which is prohibited under the ADEA but permitted under New York Exec.Law. § 296.

*Id.* at 446. A similar result was reached by the court in *Martel v. Dean Witter Reynolds, Inc.*, 738 F.Supp. 53, 57 (E.D.N.Y. 1990). That court wrote:

> [Defendant] further urges dismissal of the pendent claim because of the risk of jury confusion in considering a federal claim that does not permit an award of money damages for pain and suffering together with a state claim that does. The court is unpersuaded. *See Tasaka v. DDB Needham Worldwide, Inc.*, 729 F.Supp. 1014 (S.D.N.Y.1990) (declining to dismiss state Human rights claim pendent to ADEA claim.) The federal and

state claims here at issue involve "parallel issues," both of fact and law. Indeed, the same policies are advanced by the two claims. *See Miller v. Lovett,* 879 F.2d 1066, 1071 (2d Cir.1989) (and cases cited therein). Under such circumstances, efficiency, economy and even fairness are best served by a single adjudication of the dispute. *Id.* Such potential confusion regarding damages as defendant anticipates will be dealt with through the use of specific interrogatories in a form of special verdict. *Id.* at 1073.

*Accord, Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494 (S.D.N.Y.1989); *Selbst v. Touche Ross & Co.,* 587 F.Supp. 1015 (S.D.N.Y.1984); *Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494 (S.D.N.Y.1989).[3]

This court embraces the view expressed in *Martel v. Dean Witter Reynolds, Inc.,* 738 F.Supp. at 57, for the following reasons. First, I am unpersuaded that the court could not manage at trial the issue of different damages allowable under the ADEA and HRL. Second, I do not believe the adjudication of such issues in the same proceeding would subvert the federal policy embodied in the ADEA. Third, I am unpersuaded that many claimants would forego an administrative solution providing back pay and reinstatement, if they could win that, to bring expensive, time-consuming, uncertain litigation in federal district court. This court shall therefore exercise pendent jurisdiction over the HRL claim.

---

**3.** There is another motivation for the holdings favoring pendent jurisdiction of HRL claims. That is that New York law presents the anomalous situation that once a state administrative remedy is elected, the judicial remedy is forfeited in state court. Because filing a charge with the EEOC results in the automatic referral of the claim to the state Division of Human Rights, New York plaintiffs who file for the federal administrative remedy automatically lose their state judicial remedy. The New York courts are conscious of this predicament but, nonetheless, the Appellate Division, First Department recently held that the judicial claims are barred regardless of whether the state administrative remedy was sought directly by the litigant, or was invoked by the automatic referral process of the EEOC. *Scott v. Carter-Wallace, Inc.,* 147 A.D.2d 33, 34, 541 N.Y.S.2d 780, 781 (1st Dep't),

*app. dismissed,* 75 N.Y.2d 764, 551 N.Y.S.2d 903, 551 N.E.2d 104 (1989).

This predicament contributed at least in part to a federal court's exercise of pendent jurisdiction over a HRL claim in *Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494 (S.D.N.Y. 1989), in which the court stated:

> That this option [to pursue a state remedy in a judicial forum] was lost to her for no reason other than her desire to pursue her federal remedies as well weighs in favor of this Court's exercise of pendent jurisdiction over the state claim. This factor, as well as the aforementioned reasons of efficiency, economy, and fairness lead this Court to exercise its discretionary power to entertain the pendent state law claim.

*Id.* at 503–04.

b. The Tortious Interference with Contract Claim.

 The elements of this tort in New York are (1) the existence of a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procuring of the breach of the contract, and (4) damages. *Key Bank of Northern New York, N.A. v. Lake Placid Co.*, 103 A.D.2d 19, 479 N.Y.S.2d 862 (3rd Dep't 1984). In deciding whether or not to exercise pendent jurisdiction, the factors to be considered by the court are

(a) whether judicial economy, convenience and fairness to the litigants would be served by having the pendent state law claims determined in a single proceeding, (b) whether trying the pendent state law claims will cause jury confusion and (c) whether the pendent state claims present unsettled questions of state law.

*Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). The only significant overlap of proof between the federal and HRL claims and this state tort will likely be on the second and third elements of the tort—whether or not the defendant knew of a contract and intentionally lured Kumar away to harm Patel. As to the first and the fourth elements, the state tort presents significant questions of proof not presented by the discrimination claims.

On the basis of such a requirement of different proofs, many courts have rejected pendent jurisdiction over state law claims in discrimination suits. In *Arnell v. Pan American World Airways*, 611 F.Supp. 908, 909 (S.D.N.Y.1985), the court in an ADEA suit rejected pendent jurisdiction over state law claims for breach of employment contract, breach of covenant of good faith and fair dealing, intentional fraud and deceit, and negligent misrepresentations. The court reasoned that

plaintiff's state claims raise different issues and require different kinds of proof.... The kinds of issues created by [the employment contract] claim include whether the documents created a contract, whether defendant made oral

statements and, if so, whether any such statements, together with the documents, created a contract; and the effect of a "reservation of management rights" clause such as that which defendant had in its manual.

*Id.*

In *Bouchet v. National Urban League, Inc.*, 730 F.2d 799 (D.C.Cir.1984), then-Judge Scalia rejected pendent jurisdiction in a Title VII suit over state law claims of "sexual extortion" and tortious interference with contract. His reasoning focused on the issue of the different remedies available under the different claims:

There is a great discrepancy between the relatively limited equitable relief available under Title VII (reinstatement and back pay) and the much broader relief sought under this appellant's state causes of action (full compensatory and punitive damages), so that the pendent claims might well become the predominant element of the lawsuit.

*Id.* at 805 (citing cases which reject pendent jurisdiction over similar common law claims). Similarly, in *McLaurin v. Fischer*, 768 F.2d 98 (6th Cir.1985), the Sixth Circuit rejected pendent jurisdiction in an ADEA suit over a state law claim for tortious interference with business relations, also focusing ultimately on the issue of damages. That court reasoned that the proof required for the state claim is

irrelevant to establishing a federal age discrimination claim. Further, punitive damages are recoverable for tortious interference with business relations if the interference is attributable to ill will, spite, or hatred.... A jury could have a difficult time differentiating between punitive damages recoverable under the tortious interference claim and the liquidated damages recoverable under the age discrimination Act.

*Id.* at 105. *See also, Lazic v. Univ. of Pennsylvania*, 513 F.Supp. 761 (E.D.Pa. 1981) (rejecting, in a Title VII case, pendent jurisdiction over state claims for tortious interference with contract). *But see, People v. Holiday Inns, Inc.*, 656 F.Supp. 675 (W.D.N.Y.1984) ("Pendent claims need not

be identical to the federal causes of action alleged, and plaintiffs' tort claims, being derived from the same underlying facts as their Title VII and ADEA claims, may properly be heard by this Court.").

The federal and the state common law claims in this case will certainly present different issues of damages. On the one hand, to the extent that the interference may be found to be retaliatory, the jury shall have to craft an award according to its impact on plaintiff's efforts to vindicate his right to certain employment free from age discrimination. On the other hand, to the extent that the interference is a tortious attack on a business relationship, the jury would have to measure damages according to criteria which focus on the loss of some measured business advantage.

Unlike the adjudication of the HRL claim, the tortious interference with contract claim does involve different policy considerations from the federal (and state) age discrimination statutes. With the focus of this claim being the tort itself, and not on the interference with contract as an expression of discrimination, the goal of this litigation may shift away from the vindication of civil rights and become a dispute over the harm caused by an improper business practice.

For this reason and for others well expressed by those courts rejecting pendent jurisdiction over this claim, defendant's motion to dismiss the sixth cause of action is granted.

### V. *Prayers for Compensatory and Emotional Damages.*

Defendant moves to strike plaintiff's claim for compensatory damages and damages for mental anguish. Under New York Human Rights Law, Exec.Law § 297(4)(c)(iii), a plaintiff is entitled to recover compensatory damages for violations of § 296. Damages for mental anguish are also allowed. *Kaczor v. City of Buffalo,* 657 F.Supp. at 446. As this claim may properly be heard in this court, defendant's motion to strike plaintiff's prayer for this relief is denied.

### VI. *Conclusion.*

Defendant's motion to dismiss part of the fourth and the entire sixth cause of action is herein and hereby granted. Defendant's motion is denied as to plaintiff's fifth cause of action. Defendant is granted leave to amend its answer to respond to plaintiff's first amended complaint, its time to do so expiring 20 days from the date of this order.

SO ORDERED.