Earl E. EVANS

v.

**U OF A BOARD OF TRUSTEES, et al.**

**No. PB–C–88–257.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

June 15, 1989.

Richard Quiggle, Little Rock, Ark., for plaintiff.

Fred H. Harrison, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

HENRY WOODS, District Judge.

Plaintiff, Earl E. Evans, filed the complaint at bar on May 4, 1988 to "enjoin and redress age discrimination." Complaint at 1. He maintained in his complaint that he had been terminated from his employment with the University of Arkansas at Pine Bluff ("UAPB") solely because he had reached the age of seventy. His complaint was submitted pursuant to "the Fourteenth Amendment, as implemented through 42 U.S.C. § 1983." Complaint at 1. His complaint also invoked the pendent jurisdiction of the Court to enforce the provisions of *Ark.Code Ann.* §§ 21–3–201 to 21–3–205. The defendants thereafter answered the complaint, thereby joining the various issues.

On April 11, 1989, plaintiff submitted a motion to amend his complaint to add an allegation that the defendants retaliated against him for filing a charge of discrimination with the Equal Employment Oppor-

tunity Commission ("EEOC"). This request was granted on May 2, 1989. The defendants also answered this complaint, thereby joining this additional issue.

Plaintiff has now submitted the pending motion for partial summary judgment. He maintains that "there is no genuine issue as to any material fact concerning [his] claim of age discrimination, and therefore a ruling that the defendants are liable, as a matter of law, is mandated." Motion at 1. The defendants have responded to that motion and have submitted their own motion for summary judgment. Their motion is predicated upon several grounds.

The Court has thoroughly considered the motions and responses in this case. The Court finds that the defendants' motion should be granted and this case dismissed. In so doing, the Court denies plaintiff's motion.

SUMMARY JUDGMENT

"A motion for summary judgment should be granted if, in viewing the evidence in the light most favorable to the non-moving party, 'there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.'" *Nelson v. City of McGehee*, 876 F.2d 56, 57 (8th Cir.1989) [quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)]. *See also* Fed.R.Civ.P. 56. The non-moving party, in opposing the motion, must be given the benefit of all favorable factual inferences. *See Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987). When a motion for summary judgment is made and supported as provided for by Rule 56, the non-moving party may not " 'rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Nelson v. City of McGehee*, 876 F.2d at 57 [quoting *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)]. "Only disputes over facts that may affect the outcome of the lawsuit under the governing substantive law will properly pre-

clude the entry of summary judgment." *Nelson v. City of McGehee*, 876 F.2d at 57 [citing 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2725 at 93–95 (1983)].

FACTS

The Court has fully examined the motions and responses. Given that examination, the Court finds the following facts:

1. Plaintiff was hired by UAPB in October of 1983 as the Director of the International Agricultural Programs.[1] This non-tenured position was funded on a seventy-five percent basis by a Title XII grant. *See* paragraph C of Plaintiff's statement of material facts not in dispute.

2. During 1985, he celebrated his seventieth birthday. *See* paragraph F of Plaintiff's statement of material facts not in dispute.

3. At that time, UAPB had in effect a policy, Board Policy 425.4, which stated the following:

All employees of the University, except tenured employees, are automatically retired at the age of 70 years. Such retirement becomes effective at the end of the year (academic or fiscal, depending on length of appointment held) during which the employee shall have attained his or her seventieth birthday.

Plaintiff's Exhibit 12.

4. During that same period, there was in effect an Arkansas legislative enactment which provided for a public employee's continued employment past the age of seventy under certain circumstances. *See Ark. Code Ann.* § 21–3–201 to 21–3–205.

5. On June 5, 1985, plaintiff was terminated by UAPB in accordance with Board Policy 425.4. *See* paragraph G of Plaintiff's statement of material facts not in dispute.

6. His age was one factor, if not the only factor, in the decision by UAPB to terminate him. *See* Plaintiff's Exhibit 5.

7. On July 1, 1985, he entered into a consultant contract with UAPB to perform

---

1. Plaintiff was actually hired by the Board of Trustees for the University of Arkansas system.

For clarity's sake, however, the Court will treat UAPB and the Board as the same entity.

the same services he had performed while in its employ. This contract, to run through January 31, 1986, was entered into by UAPB because of his "demonstrated experience and expertise." Paragraph P of Plaintiff's statement of material facts not in dispute.

8. On December 10, 1985, plaintiff filed a charge of age discrimination with the EEOC. He supported that claim with the following facts: [1] he was forced to retire because he had attained the age of 70; (2) the agreement by which he was hired assured him that UAPB would "take all reasonable steps to ensure equality of opportunity in its employment practices without regard to sex, religion, age and handicap in accordance with P.L. 93–259, which provides that employment practices in keeping with this law will be free from discrimination based on age;" and (3) when he began working for UAPB, the parties were precluded from using his age as a criteria for his continued employment. Plaintiff's Exhibit 9.

9. At the time he filed the charge, the Age Discrimination in Employment Act ("ADEA") was limited to individuals who were at least forty years of age but less than seventy years of age. See 29 U.S.C. § 631(a).

10. Although it is not abundantly clear from the pleadings and exhibits, plaintiff's consultant contract was not extended past January 31, 1986. See paragraph 3 of the Defendants' statement of material facts not in dispute.

11. Either before or on January 31, 1986, Clinton Hampton was employed to fill the position once held by plaintiff. See paragraph J of Plaintiff's statement of material facts not in dispute.

12. During 1986, Congress amended the ADEA to protect any individual who was at least forty years of age. See 29 U.S.C. § 631(a).

13. At approximately the same time, Board Policy 425.4 was revised to state the following: "Effective January 1, 1987, there is no mandatory retirement age for University employees except tenured faculty." Plaintiff's Exhibit 13.

14. Mr. Hampton's contract was not renewed past June 30, 1987. See Plaintiff's Exhibit 7.

15. Following Mr. Hampton's release, plaintiff applied for his old position. He did not even receive an interview. See paragraphs L and N of Plaintiff's statement of material facts not in dispute.

16. On October 24, 1988, he filed a second charge with the EEOC. He maintained that the defendants had retaliated against him for filing the first charge of discrimination and for having filed an earlier discrimination lawsuit. See Plaintiff's Exhibit 10.

17. The position of Director of the International Agricultural Programs has not been filled, and UAPB is currently in the process of conducting a search for qualified applicants. See paragraph 11 of the Defendants' statement of material facts not in dispute.

CLAIMS

The first of plaintiff's two theories of recovery is somewhat confusing. His complaint, as previously noted, was submitted pursuant to "the Fourteenth Amendment, as implemented through 42 U.S.C. § 1983," and it also invoked the pendent jurisdiction of the Court to enforce the provisions of *Ark. Code Ann.* § 21–3–201 to 21–3–205. He now acknowledges this to be a "small misnomer."

Evans' so-called "pendent claim" is not a pure pendent claim in the sense that separate relief is sought for it. Rather, as the complaint and his motion for summary judgment make clear, his references to A.C.A. § 21–3–201, *et seq.* were for the purposes of establishing his Fourteenth Amendment claim. All A.C.A. 21–3–201, *et seq.* does for Evans is establish that state law has created an expectation on [sic] continued employment, and hence give him an [sic] property interest in his job.

The complaint will be read in vain for any claim that Evans is seeking separate or independent relief under state law despite the fact that the state statute is cited as a "pendent claim." Certainly

the Court can determine the real intent and meaning of Evans' pleading.

This small misnomer is certainly no basis for the grant of summary judgment to defendants. *Response to Cross–Motion for Summary Judgment at 7–8.* Thus, plaintiff alleges in his first claim that he had a property interest in his continued employment with UAPB. In his second claim, he maintains that the defendants retaliated against him by refusing to grant him an interview when his old position became available.

## PROPERTY INTEREST

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed. 2d 548 (1972). In order to demonstrate that he had a protectable property interest in his continued employment, plaintiff must show a legitimate claim of entitlement to that employment. *See Id.* at 577, 92 S.Ct. at 2709; *Hogue v. Clinton*, 791 F.2d 1318, 1323 (8th Cir.1986). Although protected by the Constitution, a property interest is created, and its dimension defined, by existing rules or understandings that stem from an independent source. *See Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *Skeets v. Johnson*, 816 F.2d 1213, 1214 (8th Cir.1987) (en banc). The "independent source" necessary to create a property interest can be found in state law. *See Armer v. City of Salem*, 861 F.2d 514, 515 (8th Cir.1988) [citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) ].

■ Plaintiff acknowledges that his property interest arises from state law, that being, *Ark.Code Ann.* §§ 21–3–201 to 21–3–205. The question the Court must resolve is whether this legislative enactment gives plaintiff a property interest in his continued employment with UAPB. The Court thinks not.

At the outset, the Court notes that neither party has cited a case construing *Ark. Code Ann.* §§ 21–3–201 to 21–3–205. The Court has engaged in its own search for cases addressing this act and can find none. Thus, the Court does not have the benefit of a pronouncement from an Arkansas state court.

*Ark.Code Ann.* §§ 21–3–201 to 21–3–205 addresses age discrimination in public employment. Read in part, the statute is ambiguous in that it is not clear whether it applies to employees who have passed their seventieth birthday. The title of the act indicates that it was passed to prohibit "discrimination in public employment against individuals [seventy] years of age and under." 1979 Ark.Acts 25. Section 21–3–203(a)(1) tracks that language by prohibiting the discharge of any employee because of his age if "the individual is seventy (70) years of age or younger." However, § 21–3–202 states the following: "The prohibitions in this subchapter [§§ 21–3–201–05] shall be limited to individuals who are at least forty (40) years of age but less than seventy (70) years of age." That language is similar to language in §§ 21–3–204(a) and 21–3–205(a)(1).

Because it is ambiguous, the Court is obligated to read the statute in its entirety to give full effect to the legislative intent. The Court finds, when reading the act in its entirety, that it prohibits the discharge of employees who have not yet reached their seventieth birthday. The Court gives controlling weight to the section outlining the applicability of the statute, § 21–3–202. Thus, if an employee has celebrated his seventieth birthday, he is not covered by this act.

■ In the case at bar, plaintiff celebrated his seventieth birthday during 1985. He was then terminated from his employment with UAPB at the conclusion of the 1984–85 school year. Because the statute affords no protection for those who have passed their seventieth birthday, he cannot have a protectable property interest in his continued employment.

■ Assuming, *arguendo*, that *Ark. Code Ann.* §§ 21–3–201 to 21–3–205 prohibits the discharge of those employees who have passed their seventieth birthday

but have not passed their seventy-first birthday, the act provides no protection for plaintiff. He could have continued to work "beyond the attainment of age seventy (70)" if he had received written authorization from the chief administrative officer at UAPB. A review of the act establishes that the chief administrative officer is not required to give written authorization. Because written authorization is entirely within the discretion of the chief administrative officer, it cannot be said that plaintiff had a protectable property interest in his continued employment.[2]

In summary, the Court concludes that plaintiff had no property interest in his continued employment with UAPB. There is no genuine issue of material fact on this claim, and the defendants are entitled to judgment as a matter of law. This portion of his complaint is dismissed.[3]

RETALIATION

■ The ADEA prohibits an employer from "discriminat[ing] against" an employee who has filed a charge of discrimination with the EEOC. See 29 U.S.C. § 623(d). In order to establish a claim of retaliation, plaintiff must show the following elements: (1) he engaged in conduct protected under the ADEA; (2) he was subjected to an adverse employment action at the time of, or after, the protected conduct occurred; and (3) there was a causal link between the protected activity and the adverse employment action. See Wentz v. Maryland Casualty, Co., 869 F.2d 1153, 1154–55 (8th Cir.1989).

Plaintiff maintains in his second claim that the defendants retaliated against him for complaining about his mistreatment, for filing his first charge of discrimination with the EEOC, and for filing an earlier discrimination lawsuit. This retaliation manifested itself in their refusal to grant him an interview when he applied for his old position as Director of the International Agricultural Programs.

The only plausible reason for Evans not being interviewed is that he was being retaliated against for having made complaints about his forced termination, having filed a charge with the EEOC, and having instituted legal proceedings with the Court to redress the deprivation of his Constitutional and statutory rights relative to age discrimination.

Plaintiff's Memorandum at 14.

The Court finds, as a matter of law, that the defendants did not retaliate against plaintiff. Although he apparently engaged in conduct protected by the ADEA, he cannot show that he was subjected to an adverse employment action. The Court has examined the various exhibits submitted by plaintiff, including the notice announcing the position opening, see Plaintiff's Exhibit

---

**2.** Plaintiff makes much of the consultant contract entered into by the parties. It cannot be said, however, that this contract was the "written authorization" envisioned by Ark.Code Ann. § 21–3–204(a).

**3.** Plaintiff has mentioned, at least in passing, several other related theories of recovery that warrant a limited amount of discussion. First, there is an assertion that he had a liberty interest in his continued employment. See Plaintiff's Memorandum at 6. This claim is without merit, however, given the discretionary nature of Ark.Code Ann. §§ 21–3–201 to 21–3–205. Second, he apparently maintains that his discharge pursuant to Board Policy 425.4 denied him equal protection of the laws. See Complaint at 3. Analyzing the policy under a "rational basis" test, see Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1975); Mittelstaedt v. Board of Trustees, 487 F.Supp. 960, 968 (E.D.Ark.1980) (age and retirement cases are analyzed under a "rational basis" test), the Court cannot say that it does not serve a legitimate governmental purpose and is not rationally related to the legitimate governmental purpose. Third, plaintiff apparently makes much of the inconsistencies between Ark. Code Ann. §§ 21–3–201 to 21–3–205 and Board Policy 425.4. Accepting that the two are contradictory, the Court cannot say that this fact warrants any type of relief by a federal court. Last, he alleges that Board Policy 425.4 is a bill of attainder. He fails, however, to support his contention that the policy is in some way a "trial by legislature." See United States v. Brown, 381 U.S. 437, 442, 85 S.Ct. 1707, 1712, 14 L.Ed.2d 484 (1965) (Bill of Attainder Clause intended as "a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature ..."). Assuming, arguendo, that the policy is a "trial by legislature," it furthers legitimate, non-punitive legislative purposes. See Nixon v. Administrator of General Services, 433 U.S. 425, 475–76, 97 S.Ct. 2777, 2806–07, 53 L.Ed.2d 867 (1977). Thus, this claim is also without merit.

6, and the affirmative action policy adopted by UAPB, *see* Plaintiff's Exhibit 8. These exhibits do not establish that the defendants were required to grant him an interview merely because he applied for a position then available. In addition, it seems to matter not that he was applying for his old position. It is also worth noting that these documents do not require the defendants to interview all qualified individuals.

Even were plaintiff to show that he possessed some right to be interviewed for the position, and was therefore subjected to an adverse employment action by not being interviewed, he cannot show a causal link between the protected activity and the adverse employment action. Understandably, this causal link element is most often supported by circumstantial evidence, but it would be utter speculation and conjecture for the Court to say that the defendants' failure to grant plaintiff an interview was in retaliation for his conduct. It is instructive to note that of the twelve applicants for the position once held by plaintiff, only one was given an interview, that being, Suchet Louis. *See* Plaintiff's Exhibit 7.

In summary, the Court finds that the defendants did not retaliate against plaintiff. There is no genuine issue of material fact on this claim, and they are entitled to judgment as a matter of law. This portion of his complaint is dismissed.

## CONCLUSION

The Court has thoroughly reviewed the pleadings and exhibits in this case and finds that there is no *genuine* issue of material fact. As a matter of law, the Court concludes that plaintiff had no property interest in his continued employment with UAPB and that the defendants did not retaliate against him. They are therefore entitled to judgment as a matter of law. Their motion for summary judgment is granted, and this case is dismissed. In so doing, the Court denies plaintiff's motion for partial summary judgment.

IT IS SO ORDERED.