Stanley D. COHEN, Plaintiff,

v.

S.U.P.A. INC., d/b/a/ Mail Boxes Etc. U.S.A., Wine Merchants of Syracuse, Ltd., Marshall M. Reisman, and Daniel S. Reisman, Defendants.

No. 90–CV–1284.

United States District Court, N.D. New York.

Feb. 24, 1993.

Hiscock & Barclay, Syracuse, NY (Richard K. Hughes and Rhonda B. Kublin, of counsel), for plaintiff.

Walter D. Kogut, P.C., Syracuse, NY, for defendants.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Presently before this court is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56, on the ground that there exists no genuine issues of fact necessitating trial. Plaintiff opposes such motion. Oral argument was heard on the motion on January 14, 1993. For the following reasons, defendants' motion is denied.

On June 30, 1992, plaintiff filed an amended complaint alleging that the defendants' decision to terminate him from their employment was because of his age in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. §§ 621, et seq., the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201, et seq., and the Human Rights Law of the State of New York ("NYSHRL"), N.Y.Exec.Law §§ 290, et seq. In their answer, defendants allege that plaintiff was laid off from employment for good cause, including but not limited to, his unsatisfactory job performance. In addition, defendants allege that S.U.P.A., Inc., is not an employer subject to the ADEA, and that plaintiff has

failed to satisfy all the jurisdictional prerequisites to bringing suit in federal court.

## FACTS

The plaintiff, Stanley Cohen, was employed by Wine Merchants of Syracuse, Ltd., a wholesale liquor distributor, as a salesman for 22 years. He retired from Wine Merchants in 1987 at the age of 60.[1] Approximately one year after his retirement, Marshall Reisman ("M. Reisman"), owner of Wine Merchants, contacted plaintiff to inquire whether he would be interested in acquiring an interest in a new business that he was about to begin, called Mail Boxes, Etc. ("Mail Boxes"), a retail store that provides mail and shipping services to the public. Although he declined the offer, he did accept a part-time position at Mail Boxes. Plaintiff, however, wished only to work a maximum of 25 hours per week, so that his yearly income did not exceed the social security income restriction of $6,480.00. Plaintiff began working at the Fayetteville, New York, store in November 1988, at a wage of $5.00 per hour with no additional benefits. At the time, plaintiff was receiving extended health insurance benefits through his previous employment with Wine Merchants. However, in February 1989, plaintiff's health benefits expired.

After plaintiff was notified that he would no longer receive health benefits, he contacted M. Reisman to see if there was any way that Wine Merchants could continue his health coverage. Plaintiff claims that Reisman agreed to extend his eligibility for benefits until age 65.

Sometime in March 1989, plaintiff spoke with Daniel Reisman ("D. Reisman") about his concerns that he was working too many hours, and that he could exceed the social security income restriction by the end of the year. D. Reisman suggested that plaintiff take some time off during the months of August, September, or October when the store was not busy. On or about April 26, 1989, plaintiff claims that he was permanently terminated from his job beginning May 18, 1989, and that two college students were hired in his place.[2] Approximately three weeks after his layoff, on or about June 7, 1989, plaintiff filed charges with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful termination because of his age, in violation of the NYSHRL and the ADEA.[3]

Defendants claim that they did not terminate plaintiff from his employment, and that it was plaintiff who requested to take some time off in order that his income would not exceed the social security restriction.[4] Defendants state that they decided the best time for plaintiff to take some time off was the summer months when help would be available from the son and daughter of two Vice Presidents at Wine Merchants. Plaintiff was then notified that he would be laid off from May 18, 1989, through the summer months, and that he would be called back in the fall.

Plaintiff also claims that three months after he filed his June 1989, complaint with the NYSDHR, the defendants unlawfully terminated his health benefits through Wine Merchants in retaliation for filing his complaint, despite representations from M. Reisman that Wine Merchants would continue to cover his health benefits until age 65. Therefore, on October 4, 1989, he filed a second complaint with NYSDHR alleging that defen-

---

1. After his retirement, plaintiff worked for Liquor Square, a retail liquor store, waiting on customers and occasionally stocking shelves.

2. Defendants claim that plaintiff's work at the store was not entirely satisfactory because he did not deal well with customers and was having difficulty operating the cash register and computer.

3. The ADEA, 29 U.S.C. § 623(a)(1) provides that: "It shall be unlawful for an employer ... to

discharge any individual ... because of such individual's age." Further, "[t]he prohibitions in this chapter shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

4. Defendants, in response to plaintiff's NYSDHR complaint, stated that he was laid off because his job performance was unsatisfactory, coupled with a down turn in business representing seasonal fluctuation which occurs in the summer months.

dants violated the NYSHRL, and Title VII of the Civil Rights Act of 1964.[5]

In September 1989, plaintiff was offered re-employment through the holiday season at Wine Merchants, but denied the offer since it was not substantially equivalent to his previous position and he was afraid of retaliation.[6] Defendants claim that plaintiff denied the offer of employment because he had been advised not to take the job; yet he told New York State Division of Unemployment that he was unwilling to accept full-time employment. Further, after Wine Merchants told him the job was part-time, he again declined to take the job, claiming that his doctor informed him not to lift anything and he was advised not to work for M. Reisman.

## I. IS MAIL BOXES, AN "EMPLOYER" WITHIN THE MEANING OF THE ADEA?

As a preliminary issue, this court must decide whether S.U.P.A. Inc., d/b/a Mail Boxes ("S.U.P.A./Mail Boxes") is an "employer" within the meaning of the ADEA.[7] If the answer is no, then the court need not address any other issue and will dismiss plaintiff's complaint for lack of subject matter jurisdiction.

■ The ADEA defines an employer as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). Although S.U.P.A./Mail Boxes employs twenty or more persons over a twenty or more week period, most of those employees are part-time employees. The question then becomes whether part-time employees who do not work on each day of the week are defined as "employees" within the meaning of the ADEA. If part-time employees *are* counted for the purposes of the jurisdictional requirement, then S.U.P.A./Mail Boxes is subject to the provisions of the ADEA. *Affidavit of Verne A. Lannier,* Exhibit "S".

In support of his contention, plaintiff cites to EEOC Policy Statement No. 915-052 (April 20, 1990) ("Policy Statement"), agreeing with the First and Fifth Circuits, which states that the proper determination "is to count the number of employees maintained on the payroll in any given week rather than the number of employees who report to work on any given day." Defendants, however, cite *Zimmerman v. North American Signal Company,* 704 F.2d 347 (7th Cir.1983), in which the Seventh Circuit upheld the district court's conclusion that part-time hourly employees on the days they do not work, are not counted in determining the jurisdictional requirement of the ADEA.[8] Yet, the EEOC disagrees with *Zimmerman.*[9] The EEOC expressly agrees with the logic of *Gorman v. North Pittsburgh Oral Surgery Assoc., Ltd.,* 664 F.Supp. 212, 213 (W.D.Pa.1987), which states that under the *Zimmerman* approach "a business that operates almost entirely with part-time labor could escape the prohibitions of the ADEA, despite the number of workers actually employed." *Policy Statement,* at 6.[10]

Surprisingly, the courts in the Second Circuit have left this question unanswered. Defendants cite *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89

---

5. The defendants allege that plaintiff did not concurrently file a complaint with Equal Employment Opportunity Commission ("EEOC"). Such allegation is addressed *infra,* section III.

6. At plaintiff's deposition, he stated that he did not take the job because he was "scared to work in the warehouse" because "anybody could pick a fight with me...."

7. Employees of Mail Boxes, which is a division of S.U.P.A. Inc., are employed through S.U.P.A., Inc. *See Affidavit of Verne A. Lannier,* ¶ 9; *Amended Exhibit "S", S.U.P.A., Inc. Payroll; Defendants' Rule 10(j) Statement,* ¶ 60.

8. The *Zimmerman* court distinguished between part-time employees paid by the hour and salaried employees.

9. In addition, at least one court within the seventh circuit has urged the *Zimmerman* court to reconsider its holding. *See Wright v. Kosciusko Medical Clinic, Inc.,* 791 F.Supp. 1327, 1332 (N.D.Ind.1992).

10. "We find no basis in the legislative history, canons of statutory interpretation, or public policy to support the *Zimmerman* position." *Policy Statement,* at 4.

L.Ed.2d 288, in support of their contention that the Second Circuit agrees with *Zimmerman.* However, a close reading of *Amato*, leaves the defendants without Circuit support. *Amato* involved a claim under the Employee Retirement Income Security Act, where there was not even any question that the plaintiffs were employees of the defendant. In fact, *Zimmerman* was cited by the *Amato* court for the proposition that "courts should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous."

Defendants also cite *Weber v. George Cook, Ltd.,* 563 F.Supp. 598 (S.D.N.Y.1983), in support of their proposition that courts in this Circuit have adopted the *Zimmerman* approach. The *Weber* court, however, cited *Zimmerman*'s holding, that there was a distinction between part-time employees paid by the hour and those who were paid a salary, because the defendant sought to exclude plaintiff from the definition of "employee" on that basis. In the end, the *Weber* court did not decide whether *Zimmerman* accurately interpreted the ADEA because it found that the plaintiff received a partial salary, and therefore, was included as an employee within the meaning of the ADEA.

Defendants also argue that "the statute requires that twenty employees be *present* for at least twenty weeks during one of the relevant years," *Weber,* 563 F.Supp. at 600 (emphasis added), in support of their contention that part-time employees are not present at the store on each day for twenty weeks. Although it is entirely true that employees must be present at the store, the *Weber* court was faced with employees who were independent contractors (i.e., sales representatives) stationed across the country. In fact, these sales representatives had their own offices; declared themselves as self-employed for tax purposes; kept their own business records; and operated with a great deal, if not complete, autonomy. *Id.* at 600–601. The *Weber*

court was concerned with the fact that these "employees" did not physically report to the store even on the days that they worked.[11] In the present case, there is no dispute that all the persons employed at S.U.P.A./Mail Boxes are present and accomplish all their work directly at the store.

■ After examination of the case law, this court is convinced that S.U.P.A./Mail Boxes is an "employer" within the meaning of ADEA. S.U.P.A./Mail Boxes had twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. The correct determination requires the court to examine the number of employees on the payroll of a business over a twenty week period, and not the number of employees who happen to work on any given day. An analysis of cases interpreting Title VII of the Civil Rights Act of 1964 finds support in such a conclusion. *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir. 1989); *Hyland v. New Haven Radiology Assoc., P.C.,* 794 F.2d 793, 796 (2d Cir.1986) (Since the FLSA, Title VII, and the ADEA define "employer" and "employee" in nearly identical terminology, "cases construing the definitional provisions of one are persuasive authority when interpreting the others.").

In *Thurber v. Jack Reilly's Inc.,* 717 F.2d 633, 634 (1st Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984), the First Circuit held that regular part-time employees are "employees" for the jurisdictional requirement of Title VII.[12] The *Thurber* court examined the legislative history of Title VII, especially the remarks of Title VII cosponsor Senator Dirksen who stated that the definition of "employer" was borrowed from the Unemployment Compensation Act. *Id.* The Internal Revenue Service, the agency charged with enforcement of the Unem-

---

11. "It is certainly not inconsistent ... to conclude that an employer "has" an employee on a working day, even if that employee is not physically present on that day—especially if he or she was there the day before and is expected to show up for work on the next day." *Wright,* 791 F.Supp. at 1331–1332.

12. Title VII defines an employers as one "who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

ployment Compensation Act, ruled some nine years prior to the enactment of Title VII, that an employee includes all persons "for each day that an employment relationship existed regardless of whether the employee reported to work for each day." *Id.*[13] "It is appropriate to assume that since Congress specifically modeled the term 'employer' from the Unemployment Compensation Act, it was aware of the enforcing agency's interpretations of 'employer', and intended that 'employer' under Title VII would be interpreted in the same manner. *See Cannon v. University of Chicago,* 441 U.S. 677, 696–698, 19 EPD ¶ 9, 202 (1979)." *Policy Statement.*[14] The legislative history of the ADEA offers little insight into Congress' intentions. However, the legislative history of the recently enacted Family and Medical Leave Act of 1993 does shed some light on the subject.

The Family and Medical Leave Act of 1993 defines "employer" using the now familiar language of Title VII and the ADEA; that is, an employer is defined as "any person engaged in commerce or in an industry or activity affecting commerce who employs 50 or more employees for each working day for each of 20 or more calendar workweeks in the current or preceding calendar year." S.Rep. No. 3, 103rd Cong., 1st Sess. (1993), 1993 WL 22195. In the legislative history, the Committee on Labor and Human Resources intended this language to receive the same interpretation as the courts have given the similar language of Title VII, 1993 WL 22195 *46, namely, that the word "employ" means the total number of persons that an employer maintains on his or her payroll, including part-time employees, so long as they are on the employer's payroll for each day of the workweek.

Therefore, since Congress patterned the ADEA after Title VII, and courts construing Title VII have counted part-time employees regardless of whether the employee reported to work each day, then part-time employees

are counted to fulfill the jurisdictional requirement of the ADEA. *Thurber,* 717 F.2d at 634; *Dumas v. Town of Mount Vernon, Ala.,* 612 F.2d 974, 979 n. 7 (5th Cir.1980); *Vano v. Au,* 1992 WL 175498 (W.D.Va.1992); *Simmons v. Vliets Farmers Coop. Ass'n.,* 55 Fair Empl.Prac.Cas. 1341, 1991 WL 80168, *1 (D.Kan.1991); *Gorman,* 664 F.Supp. at 213; *Musser v. Mountain View Broadcasting Inc.,* 578 F.Supp. 229, 230 (E.D.Tenn. 1984); *Hornick v. Borough of Duryea,* 507 F.Supp. 1091, 1098 (M.D.Pa.1980); *but see EEOC v. Garden & Assoc., Ltd.,* 956 F.2d 842 (8th Cir.1992); *Zimmerman,* 704 F.2d at 354.

■ In the alternative, plaintiff argues that if the *Zimmerman* logic applies, than S.U.P.A., Inc. and Wine Merchants should be considered as an "integrated enterprise" for the purposes of the ADEA. In order to determine whether two corporations comprise an integrated enterprise, the court looks to: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Marshall v. Arlene Knitwear Inc.,* 454 F.Supp. 715 (E.D.N.Y. 1978), *aff'd in part, rev'd in part,* 608 F.2d 1369 (2d Cir.1979). Plaintiff contends that S.U.P.A., Inc. and Wine Merchants easily meet these criteria. *See Plaintiff's brief,* at 23–25.

Defendants do not address *Marshall* in their brief, relying on the proposition that two corporations can only be treated as a single entity when facts show that the separate existence of the two corporations was a sham. *Mas Marques v. Digital Equipment,* 637 F.2d 24, 27 (1st Cir.1980). Therefore, as the argument goes, since there is no allegation that the two corporations exist as a sham, plaintiff's theory fails. In addition, defendants state that there is no parent/subsidiary relationship between S.U.P.A., Inc.

---

13. "The legislative history of Title VII indicates that the proper focus when determining whether an employee should be counted toward the fifteen employee requirement is whether an employment relationship exists, not an employee's particular work schedule." *Policy Statement.*

14. In fact, when Congress intended a different interpretation they stated as much. For example, in the Worker Adjustment and Retraining Notification Act (29 U.S.C. § 2102), Congress specifically *excluded* part-time employees for the definition of "employer". 29 U.S.C. § 2101(a)(1)(A).

and Wine Merchants, and that the two corporation are entirely distinct. *Id.*[15]

However, in light of the court's decision that part-time employees are counted for the purposes of the ADEA, and therefore S.U.P.A./Mail Boxes is an employer within the meaning of the ADEA, the court need not decide whether Wine Merchants and S.U.P.A./Mail Boxes are an "integrated enterprise".

## MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *Lang v. Retirement Living Pub. Company*, 949 F.2d 576, 580 (2d Cir. 1991). Therefore, "[s]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, if the nonmoving party can not produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.* at 249, 106 S.Ct. at 2510–11. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang*, 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. at 2510. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not to weigh the evidence and determine the truth of the matter," *Liberty Lobby*, at 248, 106 S.Ct. at 2510, "such is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Insurance Company*, 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied*, —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). The judge's role is "[t]o determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby*, at 249, 106 S.Ct. at 2510–11.

## II. PLAINTIFF'S CASE OF DISCRIMINATION.

▉ Plaintiff, in order to succeed on his claim, must establish either direct evidence of discrimination, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[16] First, in support of his direct evidence claim, plaintiff alleges that M. Reisman told him that he was being laid off because kids from college were out of school and they could be hired to replace plaintiff. *See Grant*, 880 F.2d 1564. Once evidence of this type has been offered, the burden then falls on the defendants to prove that they would have terminated plaintiff even if they had not taken his age into account. *Price Waterhouse*, 490 U.S. at 242, 109 S.Ct. at 1797–88. Defendants respond that any such statement was in response to plaintiff's concerns that he needed to cut

---

**15.** The *Mas Marques* court also rejected the theory that Digital Corp. was liable as a single enterprise because it found that Digital and Digital GmbH were distinct corporations. *Id.*

**16.** The elements to prove a claim under the NYSHRL are "virtually identical" to those pursuant to the ADEA and Title VII. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479–480, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982).

down on his hours to remain under the social security restriction, and defendants felt that time off in the summer was the best because college kids could replace him through the summer months. However, such conflict is for resolution by the trier of fact and not on a motion for summary judgment.

■ Second, plaintiff, in support of his prima facie claim, alleges that: (a) he was 62 years old at the time of his discharge, and therefore, a member of the protected class of employees over the age of 40; (b) he was qualified for the position; and (c) he was discharged from his employment under circumstances giving rise to an inference of discrimination; i.e., that plaintiff was replaced by younger employees—in this case two college age students.[17] *Burdine* 450 U.S. at 253–54, 101 S.Ct. at 1093–94; *Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 259 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Once the plaintiff establishes a prima facie case of discrimination, defendants must articulate a legitimate nondiscriminatory reason for their employment decision. Here, defendants claim that plaintiff was an unsatisfactory employee, and that he asked for time off in order to stay under the social security income restriction. Since plaintiff has offered sufficient evidence to cast doubt on the true reasons for his dismissal, *see* infra, whether defendants' proffered reason is a legitimate nondiscriminatory one is for resolution by the trier of fact.

Plaintiff may then attempt to prove that defendants' proffered reasons are merely a pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095. Plaintiff, as set forth in detail in Section V, infra, has

raised several questions of fact regarding whether defendants' proffered reasons were pretextual. Therefore, there exists issues of fact that must be resolved at trial on both the direct and prima facie claim of discrimination.

## III. WAS THE PLAINTIFF'S CLAIM OF RETALIATION PROPERLY FILED WITH THE EEOC?

■ Defendants' next claim is that plaintiff failed to properly file his claim of retaliation based on a violation of the ADEA with the EEOC, a statutory prerequisite, *O'Hora v. Powerex, Inc.,* 1991 WL 163509, No. 90–CV–1390 (N.D.N.Y.1991), and therefore, it should be dismissed. Defendants assert that even though plaintiff filed a claim with the NYSDHR, a complaint must be additionally filed with the EEOC in order for this court to hear the retaliation claim. *Comfort v. Rensselaer Polytechnic Institute,* 575 F.Supp. 258 (N.D.N.Y.1983). Also, defendants state that plaintiff's retaliation charge only alleged that their conduct violated Title VII. Plaintiff failed to allege that the defendants' conduct violated the ADEA.

Plaintiff, however, claims that he indicated in his NYSDHR complaint that it should be jointly filed with the EEOC, and that he received a letter verifying the filing of the retaliation charge with the EEOC. *See Affidavit of Plaintiff,* Exhibit "F" & "G". In addition, plaintiff cites *Rabzak v. County of Berks,* 815 F.2d 17 (3rd Cir.1987), for the proposition that even though he stated that the retaliation claim was pursuant to Title VII, and he now seeks redress under the ADEA, the statutory prerequisite has been achieved.

The court is satisfied that plaintiff complied with the necessary condition precedents to file suit in federal court.[18] First, in plain-

---

17. Although defendants state that he was merely laid off, plaintiff has alleged a sufficient factual basis to conclude that he was dismissed. In addition, the issue is not whether plaintiff was laid off or dismissed, but whether the employment relationship was terminated. *See Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 315 (2d Cir.1992).

18. Although defendants characterize the statutory requirements as jurisdictional, they are considered conditions precedent to filing in district court, subject to waiver and tolling provisions when equity so requires. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 396–98, 102 S.Ct. 1127, 1134–35, 71 L.Ed.2d 234 (1982); *Babrocky v. Jewel Food Co. & Retail Meatcutters Union,* 773 F.2d 857, 864 (7th Cir.1985) ("the requirement that the scope of the EEOC charge limit the

tiff's complaint to the NYSDHR, he states that the charges should be jointly filed with the EEOC. Further, as evidence of his compliance, the EEOC returned to plaintiff a confirmation letter stating that "[t]his notice is to let you know that the charge to which you are a party, *filed with both the New York State Division of Human Rights (NYSDHR) and the federal Equal Employment Opportunity Commission (EEOC)*, will be processed by the NYSDHR." *Affidavit of Plaintiff,* Exhibit "G" (emphasis added). Therefore, plaintiff has complied with the filing requirement of 29 U.S.C. § 626(d).

▮ Defendants also allege that plaintiff has failed to allege in his retaliation charge that defendants violated the ADEA. Plaintiff admits that he only alleged that defendants violated the NYSHRL and Title VII, but contends that he, nevertheless, complied with procedures, and is therefore entitled to claim that the defendants' act of retaliation violated the ADEA. *Rabzak,* 815 F.2d 17. Again, the court agrees with plaintiff.

Although plaintiff alleged, in his retaliation complaint, that defendants' actions violated the NYSHRL and Title VII, courts may exercise jurisdiction over any claim that is "reasonably related" to a charge properly filed with the EEOC, *Owens v. N.Y.C. Housing Authority,* 934 F.2d 405, 410–11 (2d Cir.1991) (Court had jurisdiction over retaliation claim even through it was not included in plaintiff's EEOC complaint); *Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984) (*quoting Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir.1980) (per curiam)), or could "reasonably be expected to grow out of the charge of discrimination." *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979) (*quoting Smith v. American President Lines Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978)), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). The Second Circuit has held that a claim is "reasonably related" to the EEOC charges when the "subsequent

scope of the subsequent complaint is in the nature of a condition precedent with which litigants must comply rather than constituting a component of subject matter jurisdiction."); *Niroomand v. Erie County Medical Center,* 1992 WL 170883, *1 (W.D.N.Y.1992).

acts are essentially the same as the earlier allegedly wrongful conduct contained in the EEOC complaint." *Almendral,* 743 F.2d at 967.

In the instant case, plaintiff initially filed his complaint with the EEOC in June 1989, alleging that he was dismissed from his employment because of his age, in violation of the NYSHRL and the ADEA. Subsequently, in October 1989, plaintiff filed a second complaint alleging that the defendants terminated his health benefits in retaliation for filing his initial complaint with the EEOC, in violation of the NYSHRL and Title VII. However, his retaliation claim is merely a continuation of his age discrimination claim; that is, the act of retaliation could not have arisen but for the protected activity, i.e., filing a complaint with the EEOC. Therefore, a complete investigation by the EEOC (or NYSDHR) would have revealed that plaintiff did not intend to allege a violation of Title VII because the complaining acts out of which the underlying charge arose was based entirely on the NYSHRL and the ADEA. Although the *Almendral, Kirkland, Silver,* and *Smith* cases involve situations where the plaintiff sought to allege new claims that were never presented to the EEOC in any form, there is no substantive difference between those cases and the instant suit which would compel a different result, even though plaintiff herein seeks to raise a different legal theory.[19]

## IV. PLAINTIFF'S CLAIM OF RETALIATION.

Plaintiff claims that after he was notified that he would no longer receive health benefits, he contacted M. Reisman to see if there was any way that Wine Merchants could continue his health coverage. Plaintiff claims that Reisman agreed to extend his eligibility for benefits until age 65. *Affidavit of Stanley Cohen,* Exhibit "A". In September 1989, he alleges that the defendants un-

**19.** As the case law indicates, even if plaintiff had failed to file a charge of retaliation with the EEOC, this court could still properly exercise jurisdiction over such a claim.

lawfully terminated his health benefits through Wine Merchants in retaliation for filing his complaint. Defendants claim that in February 1989, eighteen months after plaintiff retired from Wine Merchants, they lawfully terminated his benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), and that he was never told that his benefits would be extended until age 65. *Defendants' Notice of Motion,* Exhibit "G". at 112.

■ In order for plaintiff to establish a prima facie case of retaliation, he "must show participation in a protected activity known to the defendant, an employment action disadvantaging the person engaged in a protected activity and a causal connection between the protected activity and the adverse employment action." *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 64 (2d Cir.1992) (*citing Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991)). The issue to decide is whether the decision to terminate plaintiff's insurance coverage under the defendants' group health insurance policy was an employment action disadvantaging the plaintiff.[20]

■ First, defendants contend that plaintiff has failed to allege that the termination of his health benefits interfered with his efforts to secure other employment, and that absent such an allegation, his complaint fails to state a cause of action. *Defendants' Memorandum of Law,* at 16 (*citing Patel v. Lutheran Medical Center, Inc.,* 753 F.Supp. 1070 (E.D.N.Y.1990); *Evans v. University of Arkansas Board of Trustees,* 715 F.Supp. 249 (E.D.Arkansas 1989), *aff'd,* 902 F.2d 689 (8th Cir.1990); *Passer v. American Chemical Soc'y,* 701 F.Supp. 1 (D.D.C.1988)). The court, however, disagrees with such a broad proposition.

The district court in *Patel* primarily relied on three cases in support of its conclusion that an ADEA plaintiff must allege that the retaliatory action in some way prevented her efforts to find new employment. *Patel,* 753 F.Supp. at 1074. In *Silver,* 602 F.2d 1083,

the Second Circuit did not hold that plaintiff's allegations of "blacklisting" stated a claim of ADEA retaliation because it prevented him from securing future employment. *Patel,* 753 F.Supp. at 1074. The *Silver* court's holding was limited to a finding that charges of postemployment retaliation "fall within the broad remedial scope of Title VII," that plaintiff's allegation was "reasonably related" to his claim of religious discrimination, and that the EEOC was on "notice" that such a charge had been asserted. 602 F.2d at 1090–91. Furthermore, the *Silver* court stated that Title VII should be interpreted to "furnish a remedy against discrimination in employment, *no matter what specific form the invidious practice takes."* 602 F.2d at 1090 (emphasis added).

Similarly, in *Pantchenko v. C.B. Dolge Co., Inc.,* 581 F.2d 1052, 1055 (2d Cir.1978), the court held that although an employer's decision to refuse to provide a job reference does not violate Title VII, a refusal to provide such reference in retaliation for a former employee filing a discrimination lawsuit is a violation of Title VII. The court did not expressly base its holding on the premise that such an allegation states a cause of action because it alleges that future job efforts were frustrated.

■ Finally, the *Patel* court and the defendants cited *Passer,* 701 F.Supp. at 3, in support of its proposition that in order to state a claim of retaliation pursuant to the ADEA, a plaintiff must allege that the adverse employment action was part of his or her past or future employment relationship, or somehow affected his or her relationship with potential employers. However, the district court's holding that canceling a symposium honoring the plaintiff was not an act of "retaliation as intended by the ADEA," was reversed by the circuit court. *Passer v. American Chemical Soc'y,* 935 F.2d 322, 331 (D.C.Cir.1991). An alleged act of retaliation need "not be described strictly as an employment action" to be cognizable pursuant to the

---

**20.** There is no dispute that plaintiff was engaged in a protected activity, and there exists several factual contentions regarding the causal connection between the protected activity and the adverse employment action.

ADEA, the conduct need only have "an adverse impact on the plaintiff." *Id.*[21]

■ Therefore, in light of the remedial purposes of the ADEA, plaintiff's allegation that his benefits were terminated in retaliation for filing a complaint with the EEOC states a cognizable cause of action. The plaintiff need only allege, and offer enough evidence to survive a motion for summary judgment, that the adverse employment action resulted from "an employer's use of discrimination in connection with a prospective, present or past employment relationship to cause harm to another." *Pantchenko,* 581 F.2d at 1055. Here, the plaintiff submitted proof that his health benefits, which were to continue until age 65, were terminated because he filed an age discrimination claim with the NYSDHR and the EEOC. This is sufficient.[22]

## V. ISSUES OF FACT PRECLUDING SUMMARY JUDGMENT.

■ There are several factual disagreements between the two parties precluding summary judgment:

First, plaintiff claims that he was terminated from his job at Mail Boxes because of his age, and that two college students (a son and daughter of two Wine Merchants Vice Presidents) replaced him at similar salaries. Defendants respond that plaintiff requested the layoff because of his concern that he would exceed the social security income restriction. *Defendants' Notice of Motion,* Exhibit "G". at 60–65. However, plaintiff states that he merely spoke with D. Reisman about his concern of exceeding the social security limit, and denies any suggestion that he requested taking some time off later in the year. In fact, plaintiff claims that he was in no danger of exceeding the social security income restriction in March 1989.

Both parties do agree that it was D. Reisman who suggested that plaintiff should take some time off during the months that the store was not busy. Plaintiff states that no agreement was ever made concerning whether, or when, he would take some time off. Defendants respond that they decided to accommodate plaintiff's request for time off during the summer months, that it was their choice when plaintiff would be allowed to take the necessary time off, and that his layoff would end in September. In addition, defendants contend that it makes no sense to hire someone who is in the protected class, with full knowledge of his age, then five months later fire him because of his age. *See Proud v. Stone,* 945 F.2d 796 (4th Cir. 1991). Plaintiff, however, alleges that a return-to-work date was never discussed, nor was he given any indication that he would be rehired.[23]

Second, defendants claim, as stated in their NYSDHR response, that plaintiff was laid off from Mail Boxes because his work was unsatisfactory. Plaintiff, however, responds that he never received any oral or written notification concerning his job performance, nor did he receive any negative job evaluation. In addition, he contends that defendants' claim of unsatisfactory work performance is rebutted by the fact that he was offered re-employment in September, 1989.

Third, plaintiff contends that defendants never had any firm intentions of rehiring him in September. In support of this contention, he directs the court's attention to defendants'

---

**21.** The district court in *Patel* also relied upon *Caruso v. Peat, Marwick, Mitchell & Co.,* 664 F.Supp. 144 (S.D.N.Y.1987). However, the retaliation issue in *Caruso* was whether plaintiff needed to be an "employee" of the defendant in order to bring suit under the ADEA. *Id,* at 150. The court found that the only requirement was that the discriminatory conduct arose out of an "employment relationship." *Id; (quoting Pantchenko,* 581 F.2d at 1055).

**22.** Defendants' also allege that since plaintiff's health benefits arose out of his employment with Wine Merchants, he can not complain that any adverse employment action was taken which involved his charge of discrimination at Mail Boxes. However, although not deciding the issue of whether the two companies are an "integrated enterprise", arguably, M. Reisman had the power to terminate plaintiff's health benefits provided through Wine Merchants in retaliation for his protected activity at Mail Boxes.

**23.** Plaintiff further alleges that he was told by D. Reisman that he was being laid off because students could be hired in the summer months at minimum wage.

response to his NYSDHR complaint. In that response, defendants state that,

> The reason Mr. Cohen was laid off was because he did not deal with customers in a satisfactory manner coupled with a down turn in business representing seasonal fluctuation which occurs during the summer months ... [and] it was hoped that in the fall when we would anticipate a pick-up in the business, we would be in a position to hopefully rehire Mr. Cohen [in a different position].

*Affidavit of Richard Hughes, Exhibit "1", Deposition Exhibit "13", ¶ 5.* Plaintiff alleges that, based on this response, defendants had no intention of rehiring him in September unless business returned to its presummer level.

Fourth, plaintiff claims that he was promised by M. Reisman that his health benefits would be continued by Wine Merchants until age 65, but were terminated in September 1989, in retaliation for filing his NYSDHR complaint.[24] Defendants state, that after plaintiff's coverage expired in February 1989, pursuant to an eighteen month election provision of the COBRA, Wine Merchants was able to gratuitously extend his benefits for an extra six months, and in September 1989, the coverage expired. Further, in deposition testimony, plaintiff states only that upon reinstatement of his benefits was he told to "start sending in [his] checks again." There is no indication from plaintiff that he was promised that benefits would continue until age 65. *Defendants' Notice of Motion,* Exhibit "G", at 112. However, in light of the memorandum, supra, footnote 24, and the facts surrounding the extension of benefits to another employee, Daniel Johnson, a sufficient question for resolution by the trier of fact has been raised.

 Finally, the parties disagree as to the reasons why plaintiff turned down a subsequent employment offer at Wine Merchants, and the importance of such a deci-

sion. Defendants state that "[n]othing more clearly demonstrates the plaintiff's bad faith in filing an age discrimination complaint after requesting the lay off himself than the plaintiff's conduct in evading job offers after he filed his age discrimination complaint with the Division of Human Rights." *Defendants' Memorandum of Law,* at 11. Defendants then chronicle several reasons offered by plaintiff for his refusal to accept a position at Wine Merchants. However, defendants do not explain why such refusal supports their motion for summary judgment, except to argue that it is evidence of plaintiff's bad faith. Apparently defendants offer such testimony because this issue does factor into any issue of mitigation of damages. *Dominic v. Consolidated Edison Co. Inc.,* 822 F.2d 1249 (2d Cir.1987) (An ADEA plaintiff has a statutory obligation to mitigate his damages.) However, it does not figure into plaintiff's prima facie case of employment discrimination because of age. The damages issue to be resolved at trial, assuming the question is reached, is whether plaintiff turned down an employment offer that was "substantially equivalent" to his previous job from which he was terminated. *Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 232, 102 S.Ct. 3057, 3066, 73 L.Ed.2d 721 (1982) (Plaintiff "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied.").

## CONCLUSION

In sum, the court finds that: (1) S.U.P.A./ Mail Boxes is an "employer" within the meaning of the ADEA; (2) plaintiff's claim of retaliation was properly filed with the EEOC; (3) plaintiff has stated a cause of action for retaliation; and (4) there exists issues of fact which preclude summary judgment.

Accordingly, it is

> It has been decided to continue the Blue Cross Blue Shield coverage for Mr. and Mrs. Stan Cohen under the umbrella of our present policy. However, under no circumstances are we allowed to continue this coverage after Stan reaches age 65 as he will then be eligible for Medicare.

---

**24.** Plaintiff has submitted exhibit "A", attached to his affidavit, which is an inter-office memo, dated March 13, 1989, from M. Reisman to Verne Lannier, Vice–President of Finance for Wine Merchants, with a copy to D. Reisman, stating:

ORDERED, that defendants' motion for summary judgment is denied.

IT IS SO ORDERED.